FIRESIDE MOTORS, INC. *vs.* NISSAN MOTOR CORPORATION IN U.S.A. & another[1].

Middlesex. March 4, 1985. — July 10, 1985.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Indemnity. Notice. Practice, Civil,* Summary judgment. *Contract,* Indemnity. *Collateral Estoppel. Statute,* Retroactive effect.

An automobile dealer who made payment in settlement of its retail customer's personal injury claim arising out of an accident involving the alleged failure of the seat belt system in an automobile purchased from the dealer was not precluded by reason of that settlement from asserting a claim against the distributor and the manufacturer of the automobile on a theory of common law indemnification. [369-371]

An automobile dealer who settled a claim with a retail customer arising out of an accident in which the customer received personal injuries due to the alleged failure of the seat belt system in an automobile purchased from the dealer was not precluded from bringing an action for indemnification against the manufacturer of the automobile merely because it had failed to give the manufacturer timely notice of the pendency of the underlying personal injury action brought by the customer. [371-372]

Previous verdicts returned in favor of an automobile distributor on warranty claims brought by a retail customer against the distributor and the dealer from whom she had purchased an automobile did not preclude, on the ground of collateral estoppel, the dealer's claims against the distributor for breach of warranties in a subsequent action for indemnification, following settlement of the customer's claim against the dealer, where the dealer and distributor were not adversaries in the underlying action, and where the distributor had not met its burden of proving that the substantive issue of the breach of warranty claims were litigated and determined in that action. [372-374]

An automobile dealer was not precluded on the ground of collateral estoppel from proceeding in an action against a manufacturer for indemnification, following settlement of a retail customer's personal injury action, on its claim of negligent design and manufacture of an automobile which the dealer had sold to the customer where, as such issue was not previously

---

[1] Nissan Motor Co., Ltd.

litigated in the underlying action brought by the customer against the dealer and distributor, the manufacturer failed to prove an identity of issues. [374]

Summary judgment for the distributor and the manufacturer of an automobile sold by the plaintiff dealer to a retail customer should not have been allowed on the dealer's claim that it was entitled to a trial on the theory of common law tort indemnification, following its settlement of the customer's personal injury claim, where significant factual questions were presented on negligence of the parties, breach of warranty, and the reasonableness of the dealer's settlement with its customer. [374]

A dealer sales agreement between an automobile distributor and a dealer contained no language from which could be implied an obligation by the distributor to indemnify the dealer for the amount of a settlement it paid to a retail customer who received personal injuries in an accident involving the alleged failure of the seat belt system in the automobile she had purchased from the dealer. [374-376]

Provisions of G. L. c. 93B, § 5, creating a right to indemnification in favor of a franchisee did not operate retrospectively to provide an automobile dealer with a right to indemnity from the manufacturer and the distributor of an automobile, following the dealer's settlement of a customer's personal injury claim arising out of an accident involving the alleged failure of the seat belt system in an automobile purchased from the dealer. [376]

CIVIL ACTION commenced in the Superior Court Department on September 28, 1979.

The case was heard by *Charles R. Alberti,* J., on a motion for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Herbert D. Lewis (Roberta L. Paris* with him) for the plaintiff.

*Scott A. Smith* for the defendants.

ABRAMS, J. The plaintiff, Fireside Motors, Inc. (Fireside), an automobile dealer, sold a motor vehicle to a retail customer. The customer, Pauline Dusablon, was involved in an accident and brought an action against Fireside and Nissan Motor Corporation in U.S.A. (Nissan U.S.A.), the distributor. Fireside settled the claim with the customer, and then brought this action for indemnification against Nissan U.S.A., the distributor, and Nissan Motor Co., Ltd. (Nissan Ltd.), the manu-

facturer. The defendants filed a motion for summary judgment, which a Superior Court judge allowed. The plaintiff appeals. We transferred the case to this court on our own motion. We conclude that the judge properly determined that, as a matter of law, there was no express or implied contractual right or statutory right to indemnification. We reverse, however, on Fireside's claim that it is entitled to a trial on the theory of common law tort indemnification. On this record that issue presents significant factual questions on negligence of the parties, breach of warranty, and reasonableness of the plaintiff's settlement, which are not appropriately resolved by summary judgment. Mass. R. Civ. P. 56, 365 Mass. 824 (1974). See C.A. Wright & A.R. Miller, 10A Federal Practice and Procedure § 2734 (2d ed. 1983). We therefore reverse that portion of the summary judgment based on a claim of common law indemnity.

We summarize the facts. In 1973, Dusablon filed a declaration against Fireside and Nissan U.S.A., alleging that she had been injured when the seat belt system in her 1970 Datsun automobile, purchased from Fireside, failed during a collision in 1972. In the declaration, Counts I through IV against Fireside, and Counts V through VIII against Nissan U.S.A., alleged a breach of warranty of merchantability, a breach of express warranty, and negligent inspection (against Fireside) and negligent manufacture (against Nissan U.S.A.). Nissan Ltd. was not a party to the original suit. Fireside's attorney notified Nissan U.S.A. of the pending suit, claiming that Nissan U.S.A. was answerable to Fireside, and that if Nissan U.S.A. failed to come in and defend Fireside, Nissan U.S.A. would be bound by any determination of fact common to the two litigations.

Dusablon reached a settlement for $20,000 with Fireside during the course of the trial and the parties filed a stipulation of dismissal, with prejudice, as against Fireside. See Mass. R. Civ. P. 41 (a)(1)(ii), 365 Mass. 803 (1974). The case continued against Nissan U.S.A. The judge then allowed Nissan U.S.A.'s motion for a directed verdict as to Counts V, VI, VII, and VIII pertaining to the warranty violations, and the claim of negligent manufacture. The judge allowed Dusablon

to amend her declaration to add Count IX and go to the jury on a claim of negligent inspection and distribution. The jury found against Dusablon and for Nissan U.S.A. on Count IX and the judge entered judgment for Nissan U.S.A. in December, 1978.

In 1979, Fireside brought the present action against the defendants for $20,000, the amount of the settlement with Dusablon, plus interest, costs, and attorneys' fees. The complaint alleged breach of implied warranty of merchantability and implied warranty of fitness for intended purpose against both Nissan U.S.A. and Nissan Ltd., and alleged negligent manufacture and design against only Nissan Ltd. In November, 1983, the judge granted the defendants' motion for summary judgment.

Fireside challenges the following rulings by the judge: (1) Fireside's settlement precludes it from asserting a claim for indemnification on a common law basis; (2) there was no evidence of an implied contractual right to indemnification or any special circumstances giving rise to a right to indemnification; and (3) Fireside's settlement precludes an indemnification claim because, under G. L. c. 93B, § 5B (1984 ed.), there was no court determination of the liability of the defendants.[2] We turn to the first ruling.

1. *Common law tort indemnification.*

Fireside requests indemnification on a theory of common law tort indemnification. At common law a person may seek indemnification if that person "does not join in the negligent act but is exposed to derivative or vicarious liability for the wrongful act of another." *Stewart* v. *Roy Bros.,* 358 Mass. 446, 459 (1970). *Rathbun* v. *Western Mass. Elec. Co., ante* 361, 364 (1985). *Decker* v. *Black & Decker Mfg. Co.,* 389 Mass. 35, 40-41 (1983). *Ford* v. *Flaherty,* 364 Mass. 382, 385-386 (1973). *Gray* v. *Boston Gas Light Co.,* 114 Mass. 149, 154 (1873). See *Araujo* v. *Woods Hole, Martha's Vineyard, Nan-*

---

[2] On appeal the plaintiff does not challenge the judge's determination that there was no explicit contractual right to indemnification.

*tucket S.S. Auth.*, 693 F.2d 1, 3 (1st Cir. 1982).[3] The cause of action exists independently of statute, and whether or not contractual relations exist between the parties. W. Prosser & W. Keeton, Torts § 51, at 341 (5th ed. 1984). "The general rule is that a person who negligently causes injury to a third person is not entitled to indemnification from another person who also negligently caused that injury." *Rathbun* v. *Western Mass. Elec. Co., supra* at 364. Further, "[i]f a manufacturer supplies a defective product to a retailer, who sells it to a customer, who recovers from the retailer for an injury incurred, the retailer may recover in indemnity against the manufacturer or [she or] he may maintain an action in negligence . . . ." Restatement (Second) of Torts § 886B comment c (1979). Keeping these principles in mind, we consider the judge's ruling that Fireside's settlement precludes recovery on a theory of common law indemnification.

a. *Effect of settlement.* In granting summary judgment to the defendants, the judge ruled that Fireside's settlement of the claim against it precluded Fireside from recovering in a common law indemnity action.[4] Normally, our rule is that a person seeking common law indemnification may pursue the indemnification claim even if the claim is settled. *Swansey* v. *Chace,* 16 Gray 303, 304 (1860). *Gray* v. *Boston Gas Light Co., supra* at 155. See *Monadnock Display Fireworks, Inc.* v. *Andover,* 388 Mass. 153, 158 (1983) (implied warranty); *Great Atl. & Pac. Tea Co.* v. *Yanofsky,* 380 Mass. 326, 331-

---

[3] Many jurisdictions, especially those which have adopted the rule of comparative negligence rather than contributory negligence, have abolished the "all or nothing" rule in implied indemnity actions in favor of recognizing a theory of comparative causal responsibility, which distributes loss between joint tortfeasors in relation to fault. Restatement (Second) of Torts § 886B comment m (1979). See, e.g., *Kohr* v. *Allegheny Airlines, Inc.,* 504 F.2d 400 (7th Cir. 1974); *American Motorcycle Ass'n* v. *Superior Court,* 20 Cal. 3d 578 (1978); *Tolbert* v. *Gerber Indus.,* 255 N.W.2d 362, 367 (Minn. 1977); *Dole* v. *Dow Chem. Co.,* 30 N.Y.2d 143, 153 (1972). See also 1 S.M. Speiser, C.F. Krause & A.W. Gans, Torts §§ 3:26-3:30 (1983). But see *Zeller* v. *Cantu, ante* 76 (1985).

[4] On appeal, neither defendant argues that this ruling is correct as a matter of common law.

332 (1980); *Trustees of N.Y., N.H. & H.R.R.* v. *Tileston & Hollingsworth Co.,* 345 Mass. 727, 732-733 (1963) (contractual indemnity); *Royal Paper Box Co.* v. *Munro & Church Co.,* 284 Mass. 446, 453 (1933) (indemnity arising from breach of warranty). "Indemnity may be had even though the indemnitee settled the claim against him without waiting for suit to be brought or judgment obtained." Hennessey, Torts: Indemnity and Contribution, 47 Mass. L.Q. 421, 424 (1962). Other jurisdictions also follow this rule. See, *e.g., Jennings* v. *United States,* 374 F.2d 983, 987 (4th Cir. 1967) (Maryland law); *Forty-Eight Insulations, Inc.* v. *Johns-Manville Prods. Corp.,* 472 F. Supp. 385, 393 (N.D. Ill. 1979) (Illinois law); *Blockston* v. *United States,* 278 F. Supp. 576, 586 (D. Md. 1968) (Maryland law); *St. Paul Fire & Marine Ins. Co.* v. *Michelin Tire Corp.,* 12 Ill. App. 3d 165, 169 (1973); *McDermott* v. *City of New York,* 50 N.Y.2d 211, 220 (1980). See generally W. Prosser & W. Keeton, Torts, *supra*; 1 S.M. Speiser, C.F. Krause & A.W. Gans, Torts § 3:26, at 483 & n.6 (1983). The defendants do not suggest any reason why we should not apply the general rule to this case. Thus, the judge's ruling that the settlement was fatal to Fireside's assertion of a common law claim is erroneous.

b. *Lack of notice as to Nissan Ltd.* Nissan Ltd. contends that the plaintiff's tort action against it is barred because it did not receive timely notice of the pendency of the underlying action of Dusablon against the plaintiff.[5] The defendants' assertion that notice to a would-be indemnitor is a precondition to a subsequent indemnity action against the putative indemnitor is incorrect. The failure to give notice merely imposes on the person seeking indemnity the burden of litigating the facts supporting the indemnitor's primary liability to the original plaintiff and giving rise to the indemnity relationship itself. *Monadnock Display Fireworks, Inc.* v. *Andover,* 388 Mass. 153, 157 n.1 (1983). *Trustees of N.Y., N.H. & H.R.R.* v. *Tileston & Hollingsworth Co.,* 345 Mass. 727, 732 (1963).

---

[5] The defendants filed a joint brief. Nissan U.S.A. does not dispute the fact that it received notice of the Dusablon action.

*Miller* v. *United States Fidelity & Guar. Co.*, 291 Mass. 445, 449 (1935). See *Boston & Me. R.R.* v. *Bethlehem Steel Co.*, 311 F.2d 847, 849 (1st Cir. 1963). See also *Tillman* v. *Wheaton-Haven Recreation Ass'n*, 580 F.2d 1222, 1230 (4th Cir. 1978); *Jennings* v. *United States, supra* at 986.

The failure to give timely notice to the alleged indemnitor also imposes on the indemnitee the burden of proving that the original settlement was reasonable in all the circumstances. *Keljikian* v. *Star Brewing Co.*, 303 Mass. 53, 54 (1939). The Massachusetts cases cited by the defendants state only that lack of notice precludes a binding effect to be given the earlier judgment or settlement on the subsequent action for indemnity; the cases do not hold that there is a requirement of notice to the putative indemnitor in order to pursue an indemnity claim. Thus, there is no merit to Nissan Ltd.'s claim that Fireside's failure to give it notice of the Dusablon claim precludes Fireside from seeking indemnification based on the common law.

c. *Issue preclusion and collateral estoppel.* The defendants argue that Fireside is foreclosed from establishing its tort based common law right to indemnification by the doctrine of issue preclusion, or collateral estoppel as it is also known. The general rule of issue preclusion provides that "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." Restatement (Second) of Judgments § 27 (1982). See *Fidler* v. *E.M. Parker Co.*, 394 Mass. 534, 539 (1985), and cases cited. Not only must the subsequent litigation occur between the same parties to the prior action,[6] but also the parties must have been adversaries with respect to the issue previously litigated. Restatement (Second) of Judgments, *supra* at § 27 comment a. *O'Shea* v. *Chrysler Corp.*, 206 F. Supp. 601, 604

---

[6] In some civil cases, however, we have permitted nonmutual application of collateral estoppel when there has been a full and fair opportunity to litigate the issue. See *Fidler* v. *E.M. Parker Co., supra.* See also *Home Owners Fed. Sav. & Loan Ass'n* v. *Northwestern Fire & Marine Ins. Co.*, 354 Mass. 448, 455 (1968).

n.2 (D.N.J. 1962). Furthermore, a party precluded by the above rule from relitigating an issue with an opposing party is also precluded from doing so with another person unless the fact that he "lacked full and fair opportunity to litigate the issue in the first action or other circumstances justify affording him an opportunity to relitigate the issue." *Fidler* v. *E.M. Parker Co., supra* at 541, quoting Restatement (Second) of Judgments, *supra* at § 29.

"[C]ollateral estoppel requires the concurrence of three circumstances: (1) a common factual issue; (2) a prior determination of that issue in litigation between the same parties; and (3) a showing that the determination was in favor of the party seeking to raise the estoppel bar. *Copening* v. *United States,* [353 A.2d 305, 309 (D.C. App. 1976)]. The burden of showing these circumstances is always on the person raising the bar. *United States* v. *King,* 563 F.2d 559, 561 (2d Cir. 1977), cert. denied, 435 U.S. 918 (1978). *United States* v. *Cala,* 521 F.2d 605, 608 (2d Cir. 1975)." *Commonwealth* v. *Lopez,* 383 Mass. 497, 499 (1981).

We address the issue preclusion claims advanced by Nissan U.S.A. Nissan U.S.A. argues that Fireside's claims against it for breach of warranties are precluded by the previous verdicts in its favor on warranty claims brought by Dusablon in the original action.[7] The verdicts do not preclude litigation of the breach of warranty issues in the instant action, however, because Nissan U.S.A. and Fireside were not adversaries in the Dusablon case. Restatement (Second) of Judgments § 27 comment a (1982).

On the record before us, we also do not know the basis for the judge's ruling in the Dusablon case. The claims of breach of implied warranties of fitness and merchantability, and negligent manufacture and design may have been determined on the basis of lack of privity between the distributor and the ulti-

---

[7] This issue does not appear to have been raised below. The judge did not make any findings or rulings on issue preclusion. No memoranda either in support of or opposing the motion for summary judgment, if they exist, were included in the record. We therefore base our discussion on the pleadings before us, including the Dusablon declaration.

mate consumer rather than a substantive determination of the warranty issues.[8] On a motion for summary judgment, the burden is on the moving party to "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Mass. R. Civ. P. 56 (c). Nissan U.S.A. has not met its burden of proving that the substantive issue of the breach of warranty claims was necessarily litigated and determined.

We next address the issue preclusion claims asserted by Nissan Ltd. Even though Nissan Ltd. was not a party to the original action, it contends that the issue of its negligence is precluded by the finding for Nissan U.S.A. and against Dusablon in the prior case. The issue of the negligent manufacture or design against Nissan Ltd., as the manufacturer, however, was not previously litigated and thus Nissan Ltd. has not proved an identity of issues. Fireside is therefore not precluded from proceeding on the claim of negligent design and manufacture against Nissan Ltd.

Because the current plaintiff and Nissan U.S.A. were both defendants in the original suit, rather than adversaries, the judgment for Nissan U.S.A. is not conclusive as to the rights and liabilities of the codefendants to each other. *Appell* v. *Schneider & Pomerantz Baking Co.*, 126 Conn. 16, 18 (1939). On this record, neither defendant has proved that the issues involved in the current claims were in fact litigated in the original action. The defendants are therefore not entitled to summary judgment on the breach of warranty claims.

We turn to the other two rulings.

2. *Implied contractual right to indemnification.* "[A]ssuming without deciding that we would recognize a right to indemnification based on an implied contract to indemnify, we [hold that there is no evidence of an] implied contract here." *Decker*

---

[8] At the time of the sale in 1970 of the automobile to Dusablon, G. L. c. 106, § 2-318, did not allow a breach of warranty claim by an ultimate consumer against a remote distributor. The statute was later amended to eliminate this privity requirement. G. L. c. 106, § 2-318 (1984 ed.). See *Wolfe* v. *Ford Motor Co.*, 386 Mass. 95, 99 (1982); *Hoffman* v. *Howmedica, Inc.*, 373 Mass. 32, 35 (1977).

v. *Black & Decker Mfg. Co.,* 389 Mass. 35, 38 (1983). See *Liberty Mut. Ins. Co.* v. *Westerlind,* 374 Mass. 524, 526-527 (1978). Such a right will be implied only in two circumstances. First, when "'there are unique special factors' demonstrating that the parties intended that the putative indemnitor bear the ultimate liability," *Decker* v. *Black & Decker Mfg. Co., supra,* or second, "when there is a generally recognized special relationship between the parties." *Araujo* v. *Woods Hole, Martha's Vineyard, Nantucket S.S. Auth.,* 693 F.2d 1, 2-3 (1st Cir. 1982). *Liberty Mut. Ins. Co.* v. *Westerlind, supra* at 527.

The plaintiff's contention that the requirement of a special relationship or unique factors is satisfied by a Dealer Sales Agreement (agreement) between Nissan U.S.A. and Fireside is without support. The agreement provided neither an express provision for indemnification nor any language from which we could imply a contractual right to indemnification. In fact, the agreement states: "[T]here are no warranties, expressed or implied, made by either SELLER or MANUFACTURER except MANUFACTURER'S warranty against defective materials and workmanship [a twelve-month or 12,000 mile warranty on new Datsun motor vehicles]." The agreement further provides a merger clause: "There are no representations, promises, agreements or understandings except as herein stated."[9]

The plaintiff's reliance on the Legislature's enactment of G. L. c. 93B, § 5B (1984 ed.), which provides franchisees with a right to indemnification, as an indication of a special relationship among the parties, is also misplaced because that statute was not in effect at the time of the 1970 sale of the vehicle to Dusablon.[10] Fireside has suggested no other basis for the existence of a special relationship or unique factors that

---

[9] Because the parties have not raised on appeal the issue of the effectiveness of the disclaimer on the breach of warranty claims, and we do not have before us all of the necessary facts, we do not decide that issue. See G. L. c. 106, § 2-316 and § 1-201 (10) (1984 ed.).

[10] General Laws c. 93B, § 5B, was inserted by St. 1977, c. 717, § 4, "An Act further regulating business practices between motor vehicle manufacturers, distributors and dealers."

imply that the parties intended that the defendants would indemnify the plaintiff. We therefore conclude that the judge's determination that there was no implied contractual right to indemnification is correct.

3. *Statutory right to indemnification.* The judge ruled that G. L. c. 93B, § 5B, creates a right to indemnification in favor of a franchisee only "*after* a manufacturer or distributor, with notice, fails to assume the defense of a products liability case and a court subsequently determines the basis for liability to be solely the result of the manufacturer's or distributor's negligent design or manufacture." We need not decide the correct interpretation of § 5B, however, because the statute did not become effective until February, 1978, over seven years after Fireside sold the automobile to Dusablon, and four years after the Dusablon suit commenced. There is no evidence of a legislative intent to apply the statute retroactively, and we therefore must apply it prospectively only, see *Boston Gas Co.* v. *Department of Pub. Utils.*, 387 Mass. 531, 542 (1982); *Nantucket Conservation Found., Inc.* v. *Russell Management,* 380 Mass. 212, 214 (1980), particularly where, as here, the statute creates new substantive rights. *Austin* v. *Boston Univ. Hosp.*, 372 Mass. 654, 657 (1977). The provisions of G. L. c. 93B, § 5B, are not applicable to the case at hand.

The summary judgment is reversed and the case is remanded to the Superior Court for proceedings consistent with this opinion.

*So ordered.*