Donohue, J.
In February 1991, the plaintiffs brought this action alleging negligence, conversion, money had and received, and violations of G.L.c. 93A in Mechanics Bank’s (Bank) handling of a series of checks drawn on the plaintiffs’ accounts at the Bank from 1988 to 1990. The Bank brought a third-party claim against James Maddalena,[2] the plaintiffs’ corporate accountant, and his corporation, A.R. Davis Associates, Inc. (A.R. Davis) for breach of transfer warranties, conversion, fraud, and common law indemnification. The Bank also brought third-party claims against Donald Govoni, Sr. and Donald Govoni, Jr. for negligence and common law indemnification.
FINDINGS OF FACT
Having heard such oral testimony as the parties chose to introduce and examined their exhibits, this Court makes the following findings, based on the credible evidence and the reasonable inferences to be drawn therefrom. Except where otherwise specified, this Court makes each of these findings by a preponderance of the credible evidence:
The plaintiffs were several small family-owned companies. During the period from 1988 to 1990, Henry Govoni served as president of the companies and Donald Govoni, Sr. and Donald Govoni, Jr. served as treasurers. Henry Govoni, however, did not actively participate in the financial management of the companies. He left the finances to his brother, Donald Govoni, Sr. For more than twenty years, the plaintiffs employed James Maddalena as their corporate accountant and bookkeeper. The plaintiffs paid Maddalena a monthly fee of approximately $200. They also carried Maddalena on their health insurance.
From February 1988 through December 1990, Maddalena misappropriated $503,352.08 in checks payable to Mechanics Bank and $147,422.89 in checks payable to the Commonwealth of Massachusetts and the Division of Employment Security (DES).
The plaintiffs placed their complete trust in Maddalena. He maintained the plaintiffs’ books and records, reconciled their checkbooks, and prepared their taxes. When Maddalena requested tax checks from Henry and Donald Govoni, they simply drew a check for the requested amount, signed it, and gave it Maddalena for deposit. The plaintiffs did not supervise Maddalena’s work. They never questioned the amounts of Maddalena’s check requests nor did they ever review any of their bank statements or tax returns. They did not even request deposit receipts. Additionally, the plaintiffs never had the books audited. Armed with complete control of the plaintiffs’ corporate finances, Maddalena began defrauding the plaintiffs.
During the period from February 1988 through December 1990, the plaintiffs drew a series of checks payable to the Bank, the Commonwealth, and DES. Acting at Maddalena’s direction, the plaintiffs drew these checks intending to make tax payments that Maddalena said were due. These checks purportedly included both estimated payments made throughout the year, and balances due when the tax returns were filed. The plaintiffs gave the checks to Maddalena for deposit. Once he had the checks, however, Maddalena deposited them into the account of his own company, A.R. Davis.
*530 Like the plaintiffs, Maddalena maintained the A.R. Davis account at Mechanics Bank. Maddalena always made his deposits at the Holden branch, where he was a regular customer. He always made his deposits during the branch’s busiest hours. Many of the deposits had at least eight items and some deposits had as many as sixty-one items. Maddalena perpetrated his fraud by burying the unindorsed checks in multi-item deposits to the A.R. Davis account. In handling multi-item deposits, the Bank instructed the tellers to fan the back of the checks and quickly scan for missing indorsements. The Bank’s procedures did not require tellers to inspect the face of the checks to ensure that they were indorsed by the payee. Additionally, depending on business activity at the branch, the number of customers waiting in a line for service at the time of the deposit, and a teller’s familiarity with a given depositor, a teller could dispense with the process of fanning for indorsements. If, however, a teller discovered an unindorsed check, they were instructed to return it to the depositor. The Bank’s procedures were identical to those followed by BayBank, Shawmut, and the Bank of Boston. Since Maddalena was a regular customer who frequently made his deposits when the tellers were busy, it can be inferred that the tellers did not check the items in Maddalena’s deposits for indorsements.
Upon receipt by the tellers at the Holden branch, Maddalena’s deposits were sent to a central processing center, where the deposits were proofed. In the proofing process, a proof operator checked the total indicated on each deposit ticket against a manual totaling of the individual checks. Proofing did not involve the verification of signatures or indorsements. Once proofing was completed, each check received a Mechanics Bank processing stamp on its back. The Bank’s proofing procedure was identical to the procedures followed by BayBank and the Bank of Boston.
Next, the checks were sent through an automated sorter. Any check for more than $7,500 was diverted to a bin for manual inspection to ensure the presence of signatures and indorsements, and to check for stale dates. Twenty-nine of the checks payable to Mechanics Bank were for more than $7,500. Since all of these checks were stamped with the Bank’s processing stamp, however, they were considered to be properly indorsed. Accordingly, the checks were posted and final payment was made.
Meanwhile, six of the checks payable to the Commonwealth were for more than $7,500. Because most checks made payable to the Commonwealth and DES were for taxes, and because returning unindorsed checks payable to the Commonwealth or DES usually resulted in interest and penalties being assessed to the customer-taxpayer, the Bank’s policy was to honor unindorsed checks payable to the Commonwealth. Similar policies were followed by BayBank and Bank of Boston. As a result of the policy, the Bank posted the unindorsed checks.
In total, Maddalena deposited more than 132 unindorsed checks made payable to the Bank, the Commonwealth, and DES into the A.R. Davis account. Checks totaling $503,352.08 were made payable to Mechanics Bank. Checks totaling $147,422.89 were made payable to the Commonwealth and DES. Finally, the Court also heard credible expert testimony on how small companies similar in size to the plaintiffs generally manage their finances. It is a common practice in companies of similar size to segregate job functions so that the person keeping the books is not the person who draws the checks. This practice was not followed by the plaintiffs. In December 1990, the plaintiffs uncovered Maddalena’s fraudulent scheme.
RULINGS OF LAW
I. Negligence
A. Mechanics Bank
i. The Mechanics Bank Checks
G.L.c. 106 §1-103 provides that“[u]nless displaced by the particular provisions of [the Uniform Commercial Code], [] principles of law and equity, . . . supplement [the Code’s] provisions.” The Code does not address the issue in this case. See J. White & R. Summers, Uniform Commercial Code §16-6, at 711 (West, 1988). Therefore, this Court must look to common law.
Accordingly, this Court looks to the case law of other states for guidance. Of particular relevance is the Supreme Court of California’s opinion in Sun ‘n Sand. Inc. v. United California Bank, 582 P.2d 920 (1978).
In Sun ‘n Sand, Inc v. United California Bank, supra, an employee of Sun ‘n Sand prepared checks to be signed by a corporate officer. Over a three-year period, the employee made a series of checks payable to the United California Bank (UCB). Id. at 926. The employee maintained a personal account at UCB. Id. After obtaining the necessary signatures on the checks, the employee altered the checks, and presented them to UCB for deposit into the employee’s account. Id. Although UCB was the named payee, it permitted the proceeds of the check to be deposited into the employee’s account at UCB. Id.
The California Supreme Court held that the plaintiffs’ conduct was “sufficiently suspicious that UCB should have been alerted to the risk that Sun ‘n Sand’s employee was perpetrating a fraud. By making reasonable inquires, UCB could have discovered the fraudulent scheme and prevented its success.” Additionally, the court concluded that the bank stood in the best position to prevent the fraud. In pertinent part the court stated that:
We are not persuaded that commerce will be so impeded by a duly of inquiry in this context that we should depart from the fundamental principle that actors are liable for reasonably foreseeable losses occasioned by their conduct. The duty is narrowly circumscribed: it is activated only when checks, not insignificant in amount, are drawn payable to the order of a bank and are presented to the payee bank *531 by a third party seeking to negotiate the checks for his own benefit. Moreover, the bank’s obligation is minimal. We hold simply that the bank may not ignore the danger signals inherent in such an attempted negotiation. There must be objective indicia from which the bank could reasonably conclude that the party presenting the check is authorized to transact in the manner proposed. In the absence of such indicia the bank pays at is peril." Id. at 937.
Maddalena was an accountant and not an employee. He made his deposits into a corporate account and not simply into his own personal account. Neither fact, however, undermines the saliency of the California’s Supreme Court’s logic or its applicability to this case. Moreover, leading commentators on the Code have stated that the Sun ‘n Sand Inc. v. United California, supra represents the most enlightened approach to addressing the issue present in this case. See J. White & R. Summers, Uniform Commercial Code §16-6, at 711 (West 1988). Accordingly, adopting and following the court’s reasoning in Sun ‘nSand, Inc. v. United California Bank, supra, this Court finds the Bank to be negligent.
ii. The Commonwealth and DES Checks
“Negligence, without qualification and in its ordinary sense, is the failure of a responsible person, either by omission or by action, to exercise the degree of care, vigilance and forethought which, in the discharge of the duly then resting on him, the person of ordinary caution and prudence ought to exercise under the particular circumstances.” Altman v. Aron-son, 231 Mass. 588, 591 (1919); see also Toubiana v. Priestly, 402 Mass. 84, 88 (1988). The central issue regarding the Commonwealth and DES checks is whether the Bank exercised ordinary care. Although common law negligence is not governed by the provisions of the Code, it is instructive to look to the language of the Code to determine what constitutes ordinary care among banks. G.L.c. 106 §4-103 provides that ordinary care means action in accordance with “general banking usage not disapproved by [the Code].” “General banking usage" should be construed “to mean a general usage common to banks in the area concerned .... [a] usage followed generally throughout a state, a substantial portion of a state, a metropolitan area or the like would certainly be sufficient.” G.L.c. 106 §4-103 cmt. 4.
The Bank’s policy of processing unindorsed checks made payable to the Commonwealth was similar to the policies followed by BayBank and the Bank of Boston. The Commonwealth frequently failed to indorse checks. Since most checks made payable to the Commonwealth and DES were tax payments, bank customers usually incurred substantial interest and penalties when a bank returned the unindorsed checks. Therefore, as courtesy to customers at least several large regional banks adopted the policy of processing unindorsed checks made payable to the Commonwealth. This policy is not disapproved of by the Code. Consequently, since the practice was followed through out the state, the Bank’s policy was a “general banking usage." Accordingly, this Court finds that the Bank exercised ordinary care in processing the Commonwealth and DES checks.
B. The Govonis
As noted above, negligence is the failure of a reasonable person to exercise that degree of care that a person of ordinary caution ought to exercise under the particular circumstances. Altman v. Aronson, supra. In the context of a small business with more than two employees, it is negligence to: (1) Not periodically audit the company’s books; (2) not follow general business practices of organizations of similar size and sophistication; and (3) allow the person who controls the books, and handles cancelled checks and bank statements to also be the person who requests checks for disbursement. See J. White & R. Summers, Uniform Commercial Code §16-2, at 692-93 (West 1988) and cases cited therein.
The plaintiffs ran afoul of each of the above principles. First, the plaintiffs never conducted periodic audits. Second, by failing to participate in any oversight of the plaintiffs’ finances, Donald Govoni, Sr. and Donald Govoni, Jr. failed to follow the general business practices at similarly sized companies. Third, the plaintiffs entrusted Maddalena with oversight of the books and also gave him the power to request checks at his discretion. Accordingly, this Court finds that the plaintiffs were negligent and their negligence facilitated Maddalena’s fraudulent scheme.
II. Conversion
An action for the conversion of an instrument is governed by G.L.c. 106, §3-419. See G.L.c. 106, §1-103 (stating that “[u]nless displaced by the particular provisions of [the Code], [] principles of law and equiiy . . . shall supplement [the Code’s] provisions”). In particular, §3-419 provides that: “(1) an instrument is converted when (a) a drawee to whom it is delivered for acceptance refuses to return it on demand; or (b) any person to whom it is delivered for payment refuses on demand either to pay or to return it; or (c) it is paid on a forged indorsement.”
A. The Mechanics Bank Checks
The plaintiffs contend that the Bank converted the Mechanics Bank checks when it deposited them into A.R. Davis’s account. This Court, however, finds no facts showing that the Bank refused to pay or return an instrument. Likewise, there is no evidence that the plaintiffs demanded that any of the Mechanics Bank checks ever be returned.
Moreover, there is no evidence that the Bank paid the checks on a forged indorsement. In fact, the Mechanics Bank checks were properly indorsed. See §3-202(2). The Bank’s processing stamp was a valid indorsement for purposes of negotiation. Accordingly, *532 the Bank is not liable for converting the Mechanic Bank’s checks.
B. The Commonwealth and DES Checks
As noted above, §3-419(l)(c) specifically provides that “(a]n instrument is converted when . . . (c) it is paid on a forged indorsement.” For purposes of §3-419(l)(c), a missing indorsement constitutes a forged indorsement. General Motors Acceptance Corp. v. Abington Casualty, Ins. Co., 413 Mass. 583, 589 n.12 (1992).
The facts clearly indicate that the Bank paid the Commonwealth and DES checks despite the missing indorsements. It was the Bank’s policy to process unindorsed checks payable to the Commonwealth and DES. This Court, therefore, finds that the plaintiffs have established a prima facie case of conversion as defined by §3-419(1)(c).
Section 3-406, however, states that “(a]ny person who by his negligence substantially contributes to ... the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a . . . drawee . . . who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee’s . . . business.” In order for §3-406 to apply in this case, the facts must show that: (1) The plaintiffs were negligent; (2) their negligence substantially contributed to the making of an unauthorized signature; and (3) the Bank was a drawee who paid the checks in good faith and in accordance with reasonable banking practices.
First, as discussed supra, the plaintiffs were negligent in failing to: (1) conduct periodic audits of their books; (2) supervise Maddalena’s work; and (3) segregate job functions so that the person keeping the books was not also the person making disbursements.
Second, this Court finds that the plaintiffs’ negligence substantially contributed to Maddalena’s fraudulent scheme. See J. White & R. Summers Uniform Commercial Code, supra, at 692-93. The plaintiffs’ lax management created an environment in which Maddalena could perpetrate his fraud. Additionally, for purposes of §3-406 a missing indorsement constitutes a unauthorized signature. Kuwait Airways Corp. v. American Securities Bank. N.A., 890 F.2d 456, 463-64 (D.C. Cir. 1989) (“[T]he scope of the defense under §3-406 is coextensive with the scope of the substantive offense defined by §3-419(l)(c). It would make no sense to construe the statute otherwise”).
Third, the Bank was a drawee that acted in good faith and in accordance with reasonable banking practices. “A drawee of a check is the bank on which it is drawn.” Blacks Law Dictionary 444 (West 1979). All Commonwealth and DES checks were drawn on the plaintiffs’ accounts at the Bank. Additionally, the facts indicate that the Bank was acting in good faith when it processed the unindorsed checks. There was no credible evidence from which this Court could conclude that the Bank’s conduct was dishonest. See §1-201(19) (defining good faith as “honesty in fact in the conduct or transaction concerned”). Finally, as discussed supra, the Bank’s policy of processing the unindorsed checks was a commercially reasonable banking practice. Finding that all of the elements of §3-406 are present, this Court concludes that §3-406 precludes the plaintiffs from recovering for the conversion of the Commonwealth and DES checks.
III.Money Had and Received
“An action for money, had and received lies to recover money which should not injustice be retained by the defendant, and which in equity and good conscience should be paid to the plaintiff.” Stone & Webster Engineering Corp. v. First National Bank & Trust Co., 345 Mass. 1, 4 (1962), quoting Cobb v. Library Bureau, 268 Mass. 311, 316 (1929).
In the present case, the defendant has no money which belongs to the plaintiff. All of the checks at issue in this case were deposited into A.R. Davis’s account. Since it was A.R. Davis and Maddalena who received the proceeds of the checks, they are the parties against whom the plaintiff should have pursued an action for money had and received. Accordingly, this claim must fail.
IV. G.L.c. 93A §11
In order to recover under G.L.c. 93A, §11, the plaintiff must show that the Bank’s conduct “attained a level of rascality that would raise an eyebrow of someone inured to the rough and tumble world of commerce.” Levings v. Forbes & Wallace, Inc., 8 Mass.App.Ct. 498 (1979). Negligence alone does not amount to an unfair or deceptive act violating G.L.c. 93A. Glickman v. Brown, 21 Mass.App.Ct. 229, 234-35 (1985).
Although the defendant was negligent, the plaintiff has introduced no facts from which this Court can conclude that the Bank’s conduct “attained a level of rascality that would raise an eyebrow” in the “rough and tumble world of commerce.” Levings v. Forbes & Wallace. Inc., supra. The Bank’s policy of processing unindorsed checks made payable to the Commonwealth and DES was similar to policies followed by many large regional banks. The Bank adopted the policy as a courtesy to its customers. The facts do not support the conclusion that the Bank’s conduct was unethical, oppressive, or unscrupulous. Levings v. Forbes & Wallace. Inc., supra, at 503.
V. Indemnification
At common law, a person may seek indemnification if that person does not join in the negligent act but is exposed to derivative or vicarious liability due to the wrongful act of another. Fireside Motors, Inc. v. Nissan Motor Corp. in U.S.A., 395 Mass. 366, 369-70 (1985). Based on the evidence presented at trial, the Bank is entitled to indemnification from Maddalena and A.R. Davis for damages to the plaintiff. The Bank’s negli *533 gence, however, precludes it from seeking indemnification against Donald Govoni, Sr. or Donald Govoni, Jr. See Fireside Motors. Inc. v. Nissan Motors Corp. in U.S.A., supra, at 370.
VI. Comparative Negligence
The Bank asserts comparative negligence as a defense. See G.L.c. 231 §85. Under §85, if the plaintiffs’ negligence is greater than the Bank’s negligence, then the statute bars any recovery. However, if the plaintiffs’ negligence “was not greater than the total amount of negligence attributable” to the Bank, any damages allowed should be diminished in proportion to the amount of negligence attributable to the plaintiffs. G.L.c. 231 §85.
As discussed supra, the Bank was negligent in handling the checks payable to Mechanics Bank. However, it has also been shown that the plaintiffs’ were negligent, and that their negligence contributed to Maddalena’s fraud. Therefore, based on the credible evidence and the reasonable inferences to be drawn therefrom, this Court finds that the defendant was 75% at fault and the plaintiffs were 25% at fault.
ORDER FOR JUDGMENT
For the foregoing reasons, it is hereby ORDERED that judgment enter for the plaintiffs in the amount of three hundred and eighty-four thousand, five hundred and fourteen dollars and six cents ($384,514.06), plus interest and costs as provided bylaw, against Mechanics Bank. It is further ORDERED that the third-party defendants, James Maddalena and the A.R. Davis Co. indemnify the third-party plaintiff, Mechanics Bank.

A.R. Davis Associates, Inc., Donald Govoni, Sr., and Donald Govoni, Jr.