Brassard, J.
Plaintiff, Cheryl Hurwitz (“Hurwitz”), brought this negligence action against defendants, Summers Massachusetts Family LLC (“Summers LLC”) and John M. Summers (“Summers”), the respective owner and sublessor of an office park at 103-105 South Street, Hopkinton, Massachusetts (“the premises”), for injuries allegedly sustained on November 5, 1997, from a fall on an access road leading to a parking lot on the premises. On April 6, 2000, Summers LLC filed a third-party complaint for contribution pursuant to G.L.c. 231B and for contractual indemnity[1] against Chicago Title-Market Intelligence (“Market Intelligence”), the plaintiffs then employer and sublessee of Building #105 on the premises, in accordance with a sublease agreement between Summers and Market Intelligence. This court (Gants, J.) allowed Market Intelligence’s Motion for Summary Judgment against Summers LLC because it found that Summers LLC was not a party to the lease under which indemnity was claimed. Summers subsequently filed a cross claim against Market Intelligence in accordance with the sublease agreement alleging that in the event that Summers should be liable for the injuries allegedly sustained by Hurwitz, the liability is “merely vicarious and derivative and he [Summers] is entitled to contractual indemnity” from Market Intelligence. Market Intelligence denies that it owes indemnity to Summers and now moves for summary judgment. For the reasons set forth below, Crossclaim-Defendant, Chicago Title-Market Intelligence, Inc.’s Motion for Summary Judgment is ALLOWED in part and DENIED in part.

BACKGROUND

Hurwitz alleges that on November 5, 1997, she was injured in a fall which occurred at or about 5:45 p.m. on an access road leading from the lower parking lot to the upper parking lot at the premises in Hopkinton. At the time of the incident, Hurwitz was an employee of Market Intelligence, a sublessee of Building #105 on the premises. Hurwitz receives workers’ compensation benefits pursuant to G.L.c. 152, §23 paid on behalf of Market Intelligence as a result of her alleged sustained injuries. Hurwitz alleges, among other things, that the location where she fell was a dangerous and defective condition and that the defendants Summers LLC and Summers were negligent in the care, control, condition and maintenance of the accident location.
Summers LLC, at all times relevant hereto, was the owner and lessor of property located at 103-105 and 107-109 South Street. Hopkinton, Massachusetts. Summers LLC leased the premises to Summers who in turn executed a sublease agreement with Market Intelligence on November 20, 1996 for office space at Building #105.
The sublease agreement between Summers, sub-lessor., and Market Intelligence, sublessee, describes the leased area as “13,016 square feet in the Building on the Property.” Article 2.2 of the sublease grants Market Intelligence rights “to use . . . the common facilities of the Building and Property including common walkways, driveways . . . and the parking area ...” Pursuant to Article 5.1 of the sublease, Summers covenants to maintain: “the exterior of the Building containing the Leased Area together with all landscaping and parking area adjacent to said Building in good order (including snow removal, if applicable) and repair ...”
Mutual indemnification clauses are included in the sublease agreement whereby in Article 5.2, Summers covenants, in relevant part, to defend and indemnify Market Intelligence from any liability arising from Summers’ own negligence. Similarly, in Article 6.1(G), Market Intelligence covenants to:
defend . . . and indemnify Sublessor [Summers] from any liability or injury . . . accident or damage to any person . . . from any claims . . . arising from the . . . fault, . . . negligence or other misconduct of Sublessee [Market Intelligence] or from any use made or thing done occurring on the Leased Area not due to the fault... negligence, or other misconduct of Sublessor [Summers]. . .
Summers contends that on March 19,1997, Market Intelligence received written notice from the property manager restricting its employees to park in the lower lot. On May 1, 1997, Summers alleges that Market Intelligence and its employees received further notice not to park in the upper parking lot after dark. On October 29, 1997, Summers claims that Market Intelligence and its employees again received notice that employee vehicles must be moved from the upper parking lot prior to sunset.
Market Intelligence asserts that Summers’ claim demanding indemnity must be dismissed because (i) the stated indemnity provisions are inapplicable to the plaintiffs particular claims, (ii) the indemnity provisions as set forth in the sublease agreement are void as a matter of law pursuant to G.L.c. 186, §15, and (iii) Summers’ suggestion that Market Intelligence contributed to the accident’s occurrence is in essence a claim for contribution and must fail as a matter of law.
Summers opposes Market Intelligence’s Motion for Summary Judgment on the grounds that Market Intelligence’s failure to notify or warn Hurwitz of certain parking restrictions constitutes negligence on the part of Market Intelligence and triggers the application of the indemnity provision. Summers therefore claims that the above mentioned indemnify provision is valid and entitles Summers to indemnify “not for its own negligence but... for the negligent actions of Market Intelligence . . . and only to the extent where the Plaintiff cannot sue Market Intelligence directly.”
*31 While the thrust of Summers’ argument rests on the validity of the indemnity provision and his contractual right of indemnification, he appears to also seek apportionment of liability by asserting that Market Intelligence must "indemnify Summers to the extent of its negligence.” In addition, he asserts that in the event he is not found liable, he should be entitled to recover reasonable attorneys fees and costs incurred in resisting plaintiffs claim based on the contractual provision as well as principles of tort-based indemnification. This court will address each claim accordingly.

DISCUSSION

Summary judgment shall be granted where there are no genuine issues of material fact and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction. 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Smith v. Massimiano, 414 Mass. 81, 86 (1992); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). An adverse party may not defeat a motion for summary judgment by merely resting on the allegations and denials contained in its pleadings, but must set forth specific facts with affidavits, deposition testimony, answers to interrogatories or admissions on file showing that there is a genuine issue for trial. Mass.R.Civ.P. 56(e).

Indemnity

Under Massachusetts law, there are three sets of circumstances that give rise to a claim for indemnification; (1) an express agreement; (2) a contractual right implied from the nature of the relationship between the parties; and (3) a tort-based right where one party is held derivatively or vicariously liable for the wrongful act of another. See Fall River Housing Authority v. H.V. Collins Co., 414 Mass. 10, 13 (1992); Decker v. Black & Decker Mfg. Co., 389 Mass. 35, 37 (1983); Araujo v. Woods Hole, Martha’s Vineyard, Nantucket S.S. Auth., 691 F.2d 1, 2 (1982).[2] Summers contends in his crossclaim that if he is found liable, the liability is “merely vicarious and derivative and he [Summers] is entitled to contractual indemnity.”

Contractual Indemnification

Summers argues that the sublease agreement between Summers and Market Intelligence is a valid express contractual provision entitling Summers to indemnity from Market Intelligence for Market Intelligence’s own negligence. Massachusetts case law recognizes the general validity of contractual exemptions from liability for negligence. Cormier v. Central Mass. Chapter of the Nat’l Safety Council, 416 Mass. 286, 288-89 (1993). Under G.L.c. 186, §15, however, a landlord cannot contract away any potential liability it may have for injury, loss, or damage resulting from any omission, fault, negligence, or misconduct on the part of the landlord.[3] Young v. Garwacki, 380 Mass. 162, 171 (1980); Hanover Ins. Co. v. Charles D. Nolan & Sons, Inc., Civil No. 96-00484C (Worcester Super.Ct. February 11, 1998) (8 Mass. L. Rptr. 169); Hudson v. Atiniz, Civil No. 91-5670-E (Middlesex Super.Ct. November 10, 1993) (1 Mass. L. Rptr. 322). The statute applies to agreements “relating to real property” and is applicable to commercial leases. See Hudson v. Atinez, Civil No. 91-5670E (Middlesex Super.Ct. November 10, 1993), supra.
The indemnity provision provided in Article 6.1(G) does not, on its face, appear to shield the sublessor, Summers, from liability for Summers’ own negligence. Rather, it purports to state the opposite, that Market Intelligence shall “indemnify [Summers] from any liability or injury . . . from any claims . . . arising from the . . . negligence ... of [Market Intelligence] or from any use made or thing done not due to the . . . negligence . . . of [Summers].” (Emphasis added.) The purpose of G.L.c. 186, §15, however, is to make void an indemnity provision which “potentially has the effect of insulating a lessor from liability for the lessor’s negligence.” Knous v. Mehrez, Civil No. 97-05206D (Middlesex Super.Ct. April 30, 1999) (10 Mass. L. Rptr. 47), citing Young v. Garwacki, 380 Mass. 162 (1980). Nevertheless, if Summers is found liable to Hurwitz then, by definition, he is negligent. See Knous v. Mehrez, supra. Accordingly, Summers, if found negligent, could not seek contractual indemnification from Market Intelligence without running afoul of G.L.c. 186, §15 because such a result would shield Summers from liability for his own negligence. Id.[4]
Summers alternatively argues that in the event he is not found liable to Hurwitz, but proves that Market Intelligence was negligent, the express contractual indemnity provision would permit the recovery of reasonable legal fees and costs incurred in defending Hurwitz’s claim. Summers relies upon the contract provision that states Market Intelligence should “defend . . . and indemnify . . . from any liability . . . and from any claims . . . and expenses and costs in connection therewith (including without limitation reasonable counsel fees) arising from the . . . negligence of [Market Intelligence]. . .”
Under G.L.c. 152, §23, “[i]f an employee ... accepts payment of [workers’] compensation on account of personal injury . . . such action shall constitute a release to the insurer of all claims or demands at common law, if any, arising from the injury.” See also *32 G.L.c. 152, §24. “This exclusivity provision ordinarily bars a third party sued by the employee from recovering against the negligent employer who has paid workers’ compensation.” Larkin v. Porter, Inc., 405 Mass. 179, 181 (1989), citing 2AA. Larson, Workmen’s Compensation Law §76.00 (1988). “(Any) right of a third-party tortfeasor to recover indemnity from an employer who has paid workmen’s compensation benefits to an injured employee, must stem, if at all, from an express or implied contract of indemnity or from an obligation implied from the relationship of the parties.” Id., citing Decker, 389 Mass. at 37; Liberty Mut. Ins. Co. v. Westerlind, 374 Mass. 524, 526-27 (1978).
The Supreme Judicial Court has recognized the majority view expressed in several jurisdictions which permits express agreements by employers to bypass the exclusivity provisions of their workers' compensation statutes. Larkin, 405 Mass. at 182 n. 3 (citations omitted). In New Bedford Gas & Edison Light Co. v. Maritime Terminal, Inc., 380 Mass. 734, 736 (1980), the Court noted that to hold an employer liable to indemnify a third party is a “radical departure from the reasonable expectation of the parties, [which] is unwarranted in the absence of a clear expression in the contract.”
It appears that to date, the Supreme Judicial Court has not yet decided whether it would follow the majority rule and permit a third-party to obtain indemnity from an employer who had expressly contracted to indemnify the third party against liability for injury to the employer’s employee.
In the present case, it is undisputed that Hurwitz received workers’ compensation benefits through Market Intelligence. It is also clear from a reading of the indemnification provision that Market Intelligence agreed to indemnify Summers from any claims arising from Market Intelligence’s own negligence not due to the fault or negligence of Summers. The provision, however, does not expressly acknowledge indemnification in relation to the workers’ compensation statute.[5] Here, if Summers is not found negligent, it is unclear from the current state of Massachusetts law whether he would be entitled to recover attorneys fees from Market Intelligence for defending Hurwitz’s claim based on the express contractual provision. Because it is unclear whether Summers may be entitled to recover attorneys fees as a matter of law, it is appropriate to deny summary judgment at this stage on this particular issue. If Summers is found not negligent and Market Intelligence is found negligent, the court can then consider the issue of attorneys fees in light of the evidence presented at trial and the verdict of the jury.

Apportionment

Summers further argues that if he is found liable, the fact finder may also conclude that Market Intelligence is negligent. Summers therefore seeks apportionment as between Summers and Market Intelligence with respect to the cross claim. Summers asserts that since the plaintiff is barred from seeking relief against Market Intelligence directly under the workers’ compensation statute, Summers, pursuant to the indemnification provision, should be able to recover a proportionate share from Market Intelligence. In essence, Summers is seeking contribution from Market Intelligence.
“Under G.L.c. 23IB, contribution is allowed between joint tortfeasors who cause another, by reason of their wrongdoing, to incur injuiy or damage . .. the statute permits a plaintiff to settle with one joint tortfeasor and still have recourse against remaining tortfeasors (subject to the limitations stated in the statute). The right to contribution, unlike the right to indemnity, is based on the shared fault of the joint tortfeasors. Indemnity, on the other hand, allows someone who is without fault, compelled by operation of law to defend himself against the wrongful act of another, to recover from the wrongdoer the entire amount of his loss, including reasonable attorneys fees.” Slocum v. Donahue, 44 Mass.App.Ct. 937, 939 (1998), citing Elias v. Unisys Corp., 410 Mass. 479, 482 (1991).
Summers contends that if he is not solely liable, then Market Intelligence should indemnify him “to the extent of its negligence.” Under G.L.c. 152, §23, since Hurwitz was injured in the course of her employment and was eligible for and did receive workers’ compensation benefits, Marker Intelligence was released from all tort claims which Hurwitz might have against Market Intelligence as a result of the accident. See Liberty Mut. Ins. Co., 374 Mass. at 526; Hudson v. Atiniz, Civil No. 91-5670-E (Middlesex Super. Ct. November 10, 1993). Because Market Intelligence is not liable to Hurwitz, Summers cannot recover an apportioned share of damages from Market Intelligence. Hudson v. Atiniz, supra.

Tort-based Indemnity

In Massachusetts, tort-based indemnification is available “only when the would-be indemnitee does not join in the negligent act." Decker, 389 Mass. at 40. Tort-based indemnity exists independently of whether there is a statute or whether contractual relations exist between the parties. Fireside Motors, Inc. v. Nissan Motor Corp. IN U.S.A., 395 Mass. 366, 370 (1985); Wilhelm v. Bonnie & Clyde Contracting Co., Civ. No. 97-00482 (Middlesex Super.Ct., February 23, 1999) (9 Mass. L. Rptr. 625). The right to indemnity allows a party “who is without fault, compelled by operation of law to defend himself against the wrongful act of another, to recover from the wrongdoer the entire amount of the loss, including reasonable attorneys fees.” Santos v. Chrysler Corp., 430 Mass. 198, 217 (1999), citing Elias v. Unisys Corp., 410 Mass. 479, 482 (1991). A person may seek indemnification if that person does not join in the negligent act but is exposed to derivative or vicarious liability for the wrongful act *33 of another. Fireside Motors, Inc., 395 Mass. at 369. Indemnity is permitted only when the individual or entity seeking indemnity is not at all responsible for the negligent act. Slocum, supra; Fireside, supra at 369; Decker, supra at 40. “[T]his right to indemnity is limited to those cases in which the would be indemnitee is held derivatively or vicariously liable for the wrongful act of another, and is therefore only passively negligent.” Wilhelm, supra, citing Fireside, supra; Decker, supra.
Thus, for the reasons discussed, if Summers is found negligent, he is not, as a matter of law, entitled to seek indemnification. Alternatively, if Summers is not found negligent, there would be no indemnification, with the possible exception of attorneys fees, because there would be no need for it.
The rules of vicarious liability respond to a specific need in the law of torts: how to fully compensate an injury caused by the act of a single tortfeasor. Upon a showing of agency, vicarious liability increases the likelihood that an injury will be compensated, by providing two funds from which a plaintiff may recover. If the ultimately responsible agent is unavailable or lacks ability to pay, the innocent victim has recourse against the principal.
Elias, 410 Mass. at 483.
Because Summers and Market Intelligence, as sub-lessor and sublessee respectively, do not stand in an agency relationship, this is not a situation where vicarious liability applies. Vicarious liability may also exist in situations involving conspirators, partners, joint enterprises, and those who act in concert. See Dan B. Dobbs, The Law of Torts §333 (2000). These classifications simply do not apply to Summers and Market Intelligence. Because vicarious liability is not at issue, tort-based indemnification does not apply with respect to attorneys fees in the scenario where Summers is found not negligent.

ORDER

For the foregoing reasons, Crossclaim-Defendant, Chicago Title-Market Intelligence, Inc.’s Motion for Summary Judgment is ALLOWED in part and DENIED in part.

Summers LLC subsequently withdrew its claim for contribution.

The implied right of indemnification is not applicable in this case. This court will address the express contractual right and the tort-based right since Summers argues that his liability is “merely vicarious and derivative” and based on contractual indemnity, although a majority of the case law he cites rests on the latter theory.

“Any provision of a lease or other rental agreement relating to real property whereby a lessee or tenant enters into a covenant, agreement or contract, by the use of any words whatsoever, the effect of which is to indemnify the lessor or landlord or hold the lessor or landlord harmless, or preclude or exonerate the lessor or landlord from any or all liability to the lessee or tenant, or to any other person, for any injury, loss, damage or liability arising from any omission, fault, negligence or other misconduct of the lessor or landlord on or about the leased or rented premises or on or about any elevators, stairways, hallways or other appurtenance used in connection therewith, shall be deemed to be against public policy and void.” G.L.c. 186, §15.

This is precisely the reasoning found in my decision in Knous v. Mehrez, whereby the plaintiff, an employee of a commercial lessee, brought a negligence action against the owner of the premises where the accident and injuries occurred. Summers contends that the present case is distinguishable because the indemnification provision in Knous was broader in that it applied to “all claims whatever nature arising from any accident, Injury, or damage whatsoever to any person ... or from any accident ... in or about the Premises.” I disagree. If Summers is found negligent he is precluded under G.L.c. 186, §15 from seeking contractual indemnification for any or all liability arising from his own negligence. The statute broadly precludes a negligent landlord from recovery “for any injury, loss, damage or liability arising from any omission, fault, negligence or other misconduct of the lessor or landlord ...” This provision is sufficiently broad to preclude the recovery of attorneys fees as well.

In New Bedford. Gas and Edison Light Co. u. Maritime Terminal, Inc., the Supreme Judicial Court recognized that in cases from other jurisdictions where employers had been held liable on undertakings to indemnify third parties, notwithstanding the exclusivity provisions of applicable workmen’s compensation laws, the language of indemnity was expressly acknowledged in relation to the workmen’s compensation laws, or weis “similarly explicit, even if its effect in relation to workmen’s compensation was not expressly mentioned.” 380 Mass. at 736-37 n.2.