**MOORE–McCORMACK LINES, INC. as owner of the S.S. MORMAC-TRADE, Libellant,**

v.

**BOSTON LINE AND SERVICE COMPANY, Inc., Respondent.**

**No. 65–47–F.**

United States District Court
D. Massachusetts.

Jan. 11, 1968.

Leo F. Glynn, Boston, Mass., for plaintiff.

James A. Toye, Pres. Boston Line & Service Co., Inc., Joseph L. Tauro, Jaffee & Tauro, Lynn, Mass., James J. Hennessey, Boston, Mass., for defendant.

## OPINION

FRANCIS J. W. FORD, District Judge.

On February 2, 1963 the SS MORMACTRADE, a vessel owned by plaintiff, was anchored at the President Roads anchorage in Boston Harbor. One Julio Andrade, a member of the crew, was injured while boarding a launch owned by defendant which had come to take him and other crew members ashore. He later brought an action in Suffolk Superior Court against Moore-McCormack Lines, Inc. This action was settled by payment to Andrade of $5,000. In this action plaintiff seeks to recover indemnity from the defendant here for the amounts paid in settlement, for amounts paid to Andrade as maintenance and cure as a result of his injury and for legal fees and expenses.

Plaintiff and defendant had entered into an agreement under which defendant was to furnish launch service to transport crew members from the anchorage to Boston. On February 2, 1963 defendant sent its launch JOSEPHINE III, operated, by its employee Walter Richardson to pick up Andrade and other crew members from the MORMACTRADE and bring them ashore. The launch left defendant's pier about 5:30 p.m. and reached the anchorage area about half an hour later. It was dark at that time, the night was cold, and the sea choppy with waves of one foot to one and a half feet. Richardson was in the pilot house of the launch with only one window open on the starboard side. He had only the running lights of the launch turned on.

Andrade and two other crew members were to be picked up from the gangway rigged to the port side of their vessel. As the launch came alongside the vessel the other two seamen were on the platform at the bottom of the gangway. Andrade says he was at this time still standing at the top of the gangway, and came down after the other two men had boarded the launch. Richardson's recollection was that as he pulled alongside two men were on the platform and the third man was part way down the gangway. At any rate it is clear that Richardson knew there were three men to be picked up.

Richardson came alongside the vessel about eight or ten feet from the gangway. At this point he yelled to the men on the gangway not to jump but to wait until the launch was alongside. He backed and filled the launch several times until it was in position with the stern of the launch one or two feet under the platform of the gangway. At this point two crewmen jumped into the cockpit of the launch. Richardson did not see them but did hear the sound of two men landing behind him. Andrade was now on the platform. The only movement of the launch was an up and down bobbing in the water. The cockpit was dark, the working light used to light it was not on, and the only illumination came from a running light on the after end of the house. There were no handrails in the stern area of the launch.

Andrade stepped from the platform onto the ledge or coaming of the launch, holding the bridle of the gangway to steady himself. At this point Richardson, without giving any warning, and without looking to see where the crew members of the vessel were, started to move his launch astern. Andrade walked forward along the ledge. The other two crewmen yelled to Richardson to stop his engine. Before he stopped the launch had moved back six or seven feet and Andrade had been pinned between the gangway and the housing of the launch.

Andrade was brought ashore and treated at the U.S. Public Health Service Hospital in Brighton where his injury was diagnosed as contusion of the

thoracic dorsal spine. He was discharged on February 12, 1963. Thereafter he wore a back brace and received weekly physiotherapy from Dr. McGovern, the U.S. Public Health Service doctor at Providence, until July 16, 1963, when he was classified for duty and returned to work.

Plaintiff has paid Andrade maintenance at the rate of $8.00 a day from February 12, 1963 to July 16, 1963 in the total amount of $1,200.00. Andrade was employed as a cook and baker on the SS MORMACTRADE. His earnings averaged between $6,000 and $7,000 a year. His loss of earnings during the period of disability would amount to approximately $3,000.

There was testimony from an attorney with 22 years experience in the handling of claims for a major oil company, involving the approval of attorneys' fees in the defense of maritime claims that in his opinion the fair value of the legal services rendered in connection with the defense of the Suffolk Superior Court action was $1,100.

■ Under the circumstances here, the action of Richardson, defendant's employee, in backing the launch after it had been at rest and when he knew two men had boarded it and a third was waiting to board, without warning and without looking to see where the third man was, was negligent. Defendant was also negligent in failing to provide proper lighting for the cockpit of the launch and in failing to provide proper handrails, as required by 16 C.F.R. Chapter 1, Subpart 177.01. This negligence on the part of defendant was a contributing cause of Andrade's injuries.

■ In agreeing to provide launch service for plaintiff, defendant impliedly warranted that it would perform the service in a workmanlike manner. Its negligence constituted a breach of that warranty and rendered it liable to indemnify plaintiff for the losses plaintiff incurred as a result of that breach of warranty. Ryan Stevedoring Co., Inc. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133.

■ Plaintiff having engaged defendant to furnish a service it was obliged to furnish to its crew members, became initially liable to Andrade for his injuries resulting from the negligence of defendant in the performance of that service. Hopson v. Texaco, Inc., 383 U.S. 262, 86 S.Ct. 765, 15 L.Ed.2d 740. Having been sued by Andrade, it was entitled to enter into a fair and reasonable settlement of his claim, and to be reimbursed for the amount of such settlement and for a reasonable attorneys' fee incurred in defense against the claim. Paliaga v. Luckenbach Steamship Company, 2 Cir., 301 F.2d 403. The court finds that here plaintiff acted reasonably in settling with Andrade and that the amount of the settlement and the amount of the attorneys' fees claimed were fair and reasonable.

■ The payment of $1200 in maintenance to Andrade was fair and reasonable in amount. This expense to plaintiff was also a result of defendant's breach of warranty and plaintiff is entitled to indemnity from the defendant for this amount. United States v. Tug Manzanillo, 9 Cir., 310 F.2d 220.

Plaintiff here is entitled to indemnity from the defendant in the amount of $5000 paid in settlement of Andrade's claim, $1100 paid in legal fees and expenses of defense against said claim, and $1200 paid to Andrade as maintenance.

Judgment will be entered for plaintiff in accordance herewith.