896 F.Supp. 35 (1995)
LEASETEC CORPORATION By and Through its division, LEASETEC SYSTEMS CREDIT, Plaintiff,
v.
INHABITANTS OF the COUNTY OF CUMBERLAND, By and Through the CUMBERLAND COUNTY REGISTRY OF DEEDS, John O'Brien, Register, Defendants, Third-Party Plaintiffs,
v.
COMPUTERVISION CORPORATION, Third-Party Defendant.
Civ. No. 95-18-P-C.
United States District Court, D. Maine.
July 28, 1995.
*36 John P. McVeigh, Preti, Flaherty, Beliveau & Pachios, Portland, ME, for plaintiff.
Peter B. Lanfond, Jensen, Baird, Gardner & Henry, Portland, ME, for defendants/third-party plaintiffs.
Gerald F. Petruccelli, James B. Haddow, Petruccelli & Martin, Portland, ME, for third-party defendant.
MEMORANDUM AND ORDER GRANTING THIRD-PARTY DEFENDANT COMPUTERVISION CORPORATION'S MOTION TO DISMISS THIRD-PARTY COMPLAINT
GENE CARTER, Chief Judge.
The present action originated as a breach-of-contract claim brought by Plaintiff Leasetec Corporation ("Leasetec") against the Inhabitants of Cumberland County, by and through its Registry of Deeds ("the County") for unpaid lease payments for a computer system installed by Computervision Corporation ("Computervision") and leased by the County through Leasetec. The County filed an answer and counterclaim (Docket No. 2) and also filed a third-party complaint against Computervision (Docket No. 3). Now before the Court is Computervision's Motion to Dismiss *37 Third-Party Complaint (Docket No. 9). After consideration of the arguments presented in the briefing and oral argument on this motion, the Court concludes that the Third-Party Complaint was improperly brought under Rule 14(a) of the Federal Rules of Civil Procedure and grants Computervision's motion. The facts of the case, as stated in the County's third-party complaint, follow.

I. FACTS
This case originates in a complex relationship among these three parties created through a series of contracts in August, 1990. In 1990, the County sought to computerize the Registry of Deeds ("the Registry") for improved convenience and efficiency for those using the Registry. The County entered negotiations with Computervision, which was known at that time as "Prime Computer, Inc.," for the acquisition of equipment and software for use in the Registry. In April 1990 Computervision submitted a proposal to the County outlining the equipment, software, and consulting and maintenance services it would provide. In August 1990, the County informed Computervision that the County had selected Computervision to provide the equipment and services needed to provide computer services in the Registry. At the end of August, the County executed three contracts (collectively "the Contract") which, as a whole, addressed all of the services to be provided by Computervision through the installation and service of the new computers. Each agreement incorporated the terms of the proposal and certain supplemental terms provided through a letter submitted by Computervision just prior to the execution of the agreements.[1]
Although the Contract appeared to create a straightforward contract regarding the purchase of equipment and accompanying services that was not the extent of the arrangements worked out on August 30, 1990. On that same day, the County executed and delivered to Leasetec (then known as "Primetec Leasing, Inc."), an Assignment of Purchase/License Agreement through which the County assigned certain of its rights under the Contract with Computervision while retaining certain other rights, including any rights with respect to warranties made by Computervision. Also on August 30, 1990, the County further executed an Equipment Lease ("the Lease Agreement") under which it secured the right to acquire from Leasetec the same equipment and software it had "purchased" through its contracts with Computervision.
In short, this series of contracts and assignments established that Leasetec purchased the equipment specified by the County in its acceptance of Computervision's proposal and then leased that equipment to the County. The County's obligations ran to Leasetec to whom it was required to make lease payments. Computervision continued to have obligations under the Contract with the County under which it had made certain warranties and was obligated to provide certain services.
The parties agree to the background of the dispute but the allegations begin to diverge on matters regarding the conduct of the parties after August 30, 1990. In its third-party complaint, the County alleges that, although the equipment specified in the contract with Computervision was delivered to and installed in the Registry, the equipment "never performed as represented by Computervision." Third-Party Complaint at ¶ 15. Specifically, the County alleges that "[m]any times, the equipment and software did not work at all or only in a limited fashion," and that "[w]hen it did work, it often did so in an inaccurate manner and/or in a manner which was too slow to accommodate the needs of the Registry and members of the public." Id. The County further alleges that, although Computervision tried to correct the flaws in the equipment and software, the problems were never corrected to the degree required to be used as the County specified in the Computervision Contract.
The County states in the third-party complaint that, because the equipment was never operational to the satisfaction of the County, it was forced to terminate the Contract and *38 obtain replacement equipment, software, and accompanying services from another vendor at a cost which exceeded the contract price for the equipment and services. Although it is not stated expressly in the Third-Party Complaint, it appears to be undisputed among these three parties that at or near the time that the County terminated the Contract with Computervision it also stopped making any additional lease payments to Leasetec under the Lease Agreement.
Leasetec brought the present action to collect unpaid lease payments due under the Lease Agreement with the County. The County has denied liability under the Lease Agreement and, in addition, alleges in a third-party complaint against Computervision that Computervision's failure to provide the equipment, software, and services as represented constitutes a breach of the Contract, and further that "[b]ecause of its breach of the Contract, Computervision is liable for any damages to the County for any amounts for which the County would otherwise be liable under the terms of the [Lease] Agreement." Id. at ¶ 22. The County further alleges in its third-party complaint that Computervision was acting as an agent of Leasetec. Id. at ¶ 24. The County seeks this relief on the basis of several legal theories: breach of contract (Count I); indemnity (Count II); contribution (Count III); negligence (Count IV); negligent misrepresentations (Count V); non-acceptance of equipment and services (Count VI); failure to act in accordance with good faith and fair dealing (Count VII); breach of implied and express warranties (Count VIII); and unfair trade practices in violation of Mass.Gen.Laws Ann. ch. 93A, § 11.

II. DISCUSSION
To resolve Computervision's Motion to Dismiss, the Court must accept as true all factual allegations in the Third-Party Complaint, construe the record in favor of the County as Third-Party Plaintiffs, and decide whether, as a matter of law, the County could prove no set of facts which would entitle it to relief. Snyder v. Talbot, 836 F.Supp. 19, 22 (D.Me.1993).

A. Indemnity and Contribution

(Counts II and III)
At the outset, this Court notes that, although it will grant Computervision's motion on the basis that the Third-Party Complaint was not properly brought in the present action, the Court must, as a necessary predicate to the discussion of the application of Rule 14(a), address the merits of those counts in the Third-Party Complaint asserting the County's alleged rights to indemnification and contribution. Computervision argues here that the County has not properly stated claims for either indemnification or contribution by Computervision in the event that the County is liable under its contract with Leasetec for the unpaid lease payments. Specifically, Computervision asserts that the third-party claim here does not arise out of the prerequisite circumstances upon which to base such relief. The County responds that it may seek this relief upon a breach of warranty basis and that it is entitled to such relief since it was forced to terminate the Lease Contract as a result of Computervision's failure to supply the proper equipment and services.
Under Massachusetts law,[2] there are three different sets of circumstances giving rise to a right of indemnification. Araujo v. Woods Hole, Martha's Vineyard, Etc., 693 F.2d 1, 2 (1st Cir.1982). The first is the presence of an express agreement between the parties establishing a right to indemnification. Id. The County has not made any allegations or argument that the Contract at issue here provided for such a right.
The second set of circumstances is where a "contractual right to indemnification may be implied from the nature of the relationship between the parties." Id. To determine whether the relationship gives rise to such a right, a court must determine if *39 either of two sets of circumstances are present: (1) when "`there are unique special factors demonstrating that the parties intended that the putative indemnitor bear the ultimate liability,'" Fireside Motors, Inc. v. Nissan Motor Corporation, 395 Mass. 366, 479 N.E.2d 1386, 1391 (1985) (quoting Decker v. Black & Decker Mfg. Co., 389 Mass. 35, 449 N.E.2d 641, 644 (1983)) or (2) "`when there is a generally recognized special relationship between the parties.'" Fireside Motors, Inc., 479 N.E.2d at 1391 (quoting Araujo, 693 F.2d at 2-3). Here, the County has not even hinted at whether there are any "special factors" or whether there is a "special relationship" giving right to an implied contractual right to indemnification, nor can this Court envision any upon these facts.[3]
The third and final basis for indemnification, and the only basis to assert a right to contribution, is when the parties are joint tortfeasors. Araujo, 693 F.2d at 2; Fireside, 479 N.E.2d at 1388. Clearly the final basis for indemnification is not present since Leasetec is suing the County under a simple breach-of-contract theory without any allegations of tortious conduct. The County has not demonstrated any authority for its proposition that a breach of warranty creates indemnification rights.[4]
The absence of any tort-based theory of indemnification is also fatal to the County's claim for contribution since by statute, recovery of contribution is only permitted among joint tortfeasors. Mass.Gen.Laws Ann. ch. 231B, § 1 ("The right to contribution shall exist only in favor of a joint tortfeasor ... who has paid more than his pro rata share of the common liability."). Accordingly, the County may not, under either an indemnity or contribution theory, recover from Computervision for the amounts the County owes under the Lease Agreement.

B. Rule 14(a)
Computervision asks this Court to dismiss all counts of the Third-Party Complaint on the basis that it was not properly brought under Rule 14(a). Rule 14(a) provides, in pertinent part:
At any time after commencement of the action a defending party, as third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff.
Fed.R.Civ.P. 14(a). Specifically, Computervision argues that the third-party complaint filed by the County fails to allege that Computervision may be liable for all or part of *40 Leasetec's claim against the County and that the County's claim states a claim wholly independent of the claim brought by Leasetec.
Federal courts have characterized Rule 14(a) requirements in several ways. The United States District Court for the Eastern District of Pennsylvania has held, "To assert a claim properly under Rule 14, a third-party plaintiff must implead a person against whom it can assert joint or secondary liability arising from the original plaintiff's claim against the third-party plaintiff." Resolution Trust Corp. v. Farmer, 836 F.Supp. 1123, 1129 (E.D.Pa.1993). Another court characterized the rule similarly and stated that 14(a) permits impleading "only in cases in which the third-party defendant would be liable secondarily to the original defendant in event it is held liable to plaintiff." United States v. Berk & Berk, 767 F.Supp. 593, 604 (D.C.N.J. 1991).
Although most of the reported cases analyzing 14(a) occur in joint tortfeasor contexts, the language of Rule 14 does not itself limit impleading to cases involving joint liability. The rule is characterized as restricting the assertion of a third-party complaint to cases in which "the third party's liability is in some way dependent on the outcome of the main claim or when the third party is secondarily liable to defendant." 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 1446 at 355-356 (1990). This secondary or derivative liability is the primary factor in a 14(a) analysis and the requirement that it exist may be satisfied "of the third-party claim indemnity, subrogation, contribution, express or implied warranty, or some other theory." Id. at 361-64. One court stated, "Rule 14(a) does not allow the defendant to assert a separate and independent claim even though the claim arises out of the same general set of facts as the main claim." United States v. Olavarrieta, 812 F.2d 640, 643 (11th Cir.1987). The United States Supreme Court has stated that a third-party complaint brought under 14(a) "depends at least in part upon the resolution of the primary lawsuit.... Its relation to the original complaint is thus not mere factual similarity but logical dependence." Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 376, 98 S.Ct. 2396, 2404, 57 L.Ed.2d 274 (1978). In disputes regarding whether a third-party complaint is properly asserted, "the burden [is] on the third-party plaintiff to show that if it is found to be liable to the third-party plaintiff, the third-party defendant will in turn be liable to the third-party plaintiff." Massachusetts Laborers' Health and Welfare Fund v. Varrasso, 111 F.R.D. 62, 63 (D.Mass.1986).
In this case, although the County seeks to recover from Computervision on its indemnity and contribution claims, those claims, as discussed supra, are not properly asserted bases for relief. The remaining counts of the Third-Party Complaint are clearly independent claims that, in no way, depend upon the outcome of Leasetec's claims against the County. Regardless of whether the County is or is not liable on the Lease Agreement, Computervision may nonetheless be liable to the County on one or more of the claims. If Computervision did breach the Contract or did engage in any tortious conduct, then Computervision is liable to the County now for damages. Similarly, the breach of express warranty claim does not state the proper dependence on the claims brought by Leasetec against Computervision. The claim asserted here should be compared with one in which the County claims that Computervision breached an express warranty made to Leasetec rather than the County. It may be that the County seeks to include its liability on the rental contract as an element of damages in its contract claims against Computervision but the question of Computervision's liability is not tied to the outcome of the original claim by Leasetec.[5] If Leasetec is successful in its claims against the County it will be because of the terms of and performance of the parties under the Lease Agreement, and not due to any actions of Computervision. Under the facts asserted in the *41 Third-Party Complaint, there simply is no basis upon which Computervision can be held liable in whole or in part for Leasetec claim's against the County on the Lease Agreement.
The resolution of this procedural issue presents a challenge to the Court since this case involves an unusual set of facts and relationships. The Court has reviewed, however, a case in which a comparable thirdparty claim was dismissed as improperly brought under Rule 14(a). In Unilease Computer Corp. v. Major Computer Inc., 126 F.R.D. 490 (S.D.N.Y.1989) the district court there was also faced with a computer-leasing fact pattern, but the relationships and claims were different from those presented here. Unilease, the plaintiff there had brought a complaint against Major Computing, the defendant and third-party plaintiff, seeking damages for Major Computing's alleged failure to make rental payments on computer parts leased by it from Unilease. The parts were then subleased by Major Computing to another company, Stat Tab, the third-party defendant. A disagreement arose between Major Computing and Stat Tab in which Stat Tab claimed that the parts were not of the type ordered and which resulted in Stat Tab refusing to pay Major Computing and bringing an action against Major Computing.
Major Computing, presumably stopped making its required payments to Unilease when it stopped receiving payments from Stat Tab. When Unilease brought the action seeking to recover the unpaid lease payments, Major Computing filed a third-party complaint against Stat Tab asserting a claim based on Stat Tab's failure to pay Major Computing. The district court granted Stat Tab's motion to dismiss the third-party complaint on the basis that the claim was "neither derivative of, nor dependent on the outcome of Unilease's claim against Major [Computing]." Id. at 493. The court found no contractual provision stating that Major Computing's obligation to pay Unilease was somehow dependant upon Stat Tab's sublease payments. Id.
In Unilease and the present case, the third-party claims are similar in that they both assert a claim that "you owe me because your breach of our contract caused me to breach my contract with the plaintiff." In neither case, however, was the third-party plaintiff's breach actually caused by or excused as a result of the third-party defendant's actions. As stated above, the fact that the County may have an action against Computervision in which it could recover, as an element of damages, payments it made to Leasetec for the faulty equipment does not make the third-party claim dependent on the initial claim. Since the Third-Party Complaint fails to comply with the requirements of Rule 14(a), it must be dismissed and the County must seek relief against Computervision in a wholly separate action.[6]

III. CONCLUSION
Accordingly, Computervision's Motion to Dismiss Cumberland County's Third-Party Complaint is GRANTED and it is ORDERED that Counts II and III of the Third-Party Complaint be, and they are hereby, DISMISSED with prejudice and that all other counts thereof be, and are hereby, DISMISSED without prejudice.
So ORDERED.
NOTES
[1] The group of contracts consisted of: (1) a Purchase and License Schedule; (2) a Master Service Agreement; and (3) an Agreement for Professional services.
[2] The parties do not dispute that, as expressly provided in the Contract, Massachusetts law applies to the determination of the County's entitlement to any indemnification or contribution from Computervision and that, in any event, the result would be the same under the application of the law either of Massachusetts or of Maine.
[3] The Massachusetts Supreme Judicial Court has concluded that such special factors were present in at least two cases. Monadnock Display Fireworks, Inc. v. Andover, 388 Mass. 153, 445 N.E.2d 1053 (1983) (holding that the town's promise to provide police protection during a fireworks display created an implied promise to indemnify the fireworks company for damages paid to a spectator injured during the display); Great Atl. and Pac. Tea Co. v. Yanofsky, 380 Mass. 326, 403 N.E.2d 370 (1980) (holding that a lessor's promise to make all outside repairs to the lease property created an implied promise to indemnify lessee for any damages arising from lessor's failure to make such repairs.). The facts here are in no way comparable to either of these cases.

The Massachusetts high court rejected a finding of an implied contractual right to indemnification from a sales agreement alone. Decker v. Black and Decker Mfg. Co., 389 Mass. 35, 449 N.E.2d 641, 643 (1983). The high court also held in that case, "[The] right to indemnity is limited to those cases in which the would-be indemnitee is held derivatively or vicariously liable for the wrongful act of another." Id. 449 N.E.2d at 645.
[4] The Court has reviewed and considered the cases cited by the County and concludes that none is squarely on point. None of the opinions was issued in the context of a third-party action. The cases address either the proper inclusion of settlement fees previously paid to third persons in separate actions or claims as an element of damages resulting from a breach of warranty, City Welding and Mfg. Co. v. Gidley-Eschenheimer Corp., 16 Mass.App.Ct. 372, 451 N.E.2d 734, 737 (1983); Royal Paper Box Co. v. Munro & Church Co., 284 Mass. 446, 188 N.E. 223, 225 (1933); Moore-McCormack Lines, Inc. v. Boston Line and Service Co., Inc., 286 F.Supp. 399, 401 (D.Mass. 1968) (applying admiralty law), or the entitlement to indemnification when it is provided as an implied contractual right, such as the right of a buyer to recover medical expenses for injuries to the buyer's wife resulting from the defendant's breach of warranty, Paradis v. A.L. Nichols Co., 299 Mass. 364, 12 N.E.2d 863, 864 (1938), neither of which applies here.
[5] In fact, language in the Third-Party Complaint indicates that the County envisions a recovery under a damages theory rather than on any legal concept of indemnification or secondary liability: "Because of its breach of the Contract, Computervision is liable in damages to the County for any amounts for which the County would otherwise be liable under the terms of the [Lease] Agreement." Third-Party Complaint at ¶ 22.
[6] Computervision asks this Court to grant this motion on the merits of the individual counts in the Third-Party Complaint since it anticipates that, after dismissal of the Third-Party Complaint, the County will simply file with the Court an identical complaint in a separate action. The County chose this forum, Computervision argues, and presumably the pleadings will not be any more meritorious in any separate action.

This Court disagrees. Since, as this Court concludes, the Third-Party Complaint is not properly before the Court, it would be improper for the Court to address the merits of the pleadings, the resolution of which is unnecessary for the disposition of the present motion. Accordingly, the motion is granted without prejudice to the individual counts, with the exception of the counts asserting the County's entitlement to contribution and indemnification (Counts II and III), the resolution of which was a predicate to a determination of the Rule 14(a) analysis.