**GE HEALTHCARE FINANCIAL SERVICES, a component of General Electric Company, Plaintiff,**

v.

**EBW LASER, INC., Defendant, Third Party Plaintiff,**

v.

**Alcon Laboratories, Inc., and Refractive Horizons, L.P., Third Party Defendants.**

**No. 1:03CV00514.**

United States District Court, M.D. North Carolina.

Dec. 8, 2004.

Allen Holt Gwyn, Conner Gwyn Schenck, PLLC, Douglas S. Harris, Greensboro, NC, Robert M. Hirsh, Duane Morris LLP, New York City, for Plaintiff.

Douglas S. Harris, Greensboro, NC, for Defendant.

*MEMORANDUM OPINION*

BEATY, District Judge.

## I. INTRODUCTION

The matter before the Court involves a breach of contract action filed by GE Healthcare Financial Services ("GE"), a component of General Electric Company, against EBW Laser, Inc. ("EBW" or "Third–Party Plaintiff"). EBW entered into sixteen separate Master Lease Agreements whereby GE financed EBW's acquisition of medical equipment owned by GE, including six excimer lasers for eye surgery that had been manufactured and licensed by Alcon Laboratories, Inc. ("Alcon") and Refractive Horizons, L.P., a Texas Limited Partnership, ("Refractive"). Refractive is named here because it owns certain technology rights and collects fees related to the use of the six excimer lasers that EBW acquired by lease from GE and by agreement and license from Alcon.[1] Under the Master Lease Agreements, EBW leased the lasers from GE. EBW in turn entered into separate agreements with physicians and clinics for the use of the laser equipment for eye surgeries. Because of EBW's alleged default under the sixteen Master Lease Agreements, GE filed the present action to recover damages, including attorneys' fees, from EBW for its failure and continued refusal to pay monies due under the lease agreements. GE's action was simply a breach of contract action for EBW's failure to pay monies owed to GE. The Court notes that neither Alcon nor Refractive, nor any predecessors in interest to Alcon, had any contractual relationship with GE connected to the Master Lease Agreements between GE and EBW. EBW responded to GE's present lawsuit by filing an Answer in which EBW generally admitted that it had ceased paying the lease payments owed to GE, but denied that it was in default or that it had refused to pay. It appears from EBW's Answer that it is alternatively asserting that it was prevented from paying GE "due to impossibility." (Def.'s Answer at 2). EBW

---

1. The Refractive Partnership was composed of Summit Autonomous, Inc. ("Summit"), as general partner and Autonomous Technologies Corporation, as limited partner. Summit was a manufacturer and distributor of the excimer lasers.

Alcon, however, purchased Summit in 2000 and therefore succeeded to Summit's rights in Refractive and Summit's rights under the agreement and license that existed between EBW and Summit.

further asserted the defense of impossibility due to the practical destruction of the laser machines because they could no longer function for their intended use. Specifically, EBW alleged that the actions of Alcon and Refractive, as would be described in the Third–Party Complaint at issue here, rendered the lasers totally unusable, so as to destroy the subject matter of the lease agreements EBW had with GE. On July 14, 2003, EBW indeed filed a Third–Party Complaint against Alcon and Refractive (together, the "Third–Party Defendants"). EBW attempted to justify the filing of a Third–Party Complaint in GE's present action against EBW by alleging that the actions of Alcon and Refractive were the reasons that EBW has not been able to pay its debt to GE. EBW further asserted that any debt that EBW is found to owe GE is actually owed to GE by Alcon and Refractive because GE's lawsuit against it for non-payment of debt involves financing, in part, for the same six lasers that EBW had licensed from Alcon and Refractive. It is EBW's contention in its Third–Party Complaint that Alcon and Refractive engaged in conduct that violated the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–68 ("RICO") and the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen.Stat. § 75–1.1 (the "North Carolina UDTPA"). However, EBW's Third–Party Complaint does not allege how any of this conduct by Alcon or Refractive would have obligated them to GE in any manner.

On August 11, 2003, pursuant to Rule 12(b)(6) and Rule 14 of the Federal Rules of Civil Procedure, Alcon and Refractive filed a Motion to Dismiss EBW's Third–Party Complaint [Document # 10] as being improperly filed. To the extent that the Court would deny their Motion to Dismiss, Alcon and Refractive alternatively requested that the Court sever EBW's Third–Party Complaint from this action and consolidate it with EBW's pending complaint in the Middle District of North Carolina against Alcon and Refractive, which was removed from state

court and now appears as *EBW Laser, Inc. v. Alcon Laboratories and Refractive Horizons, L.P.*, 1:03CV605, which is pending before another judge of this court. The Court has appropriately reviewed EBW's Memorandum of Law Opposing Alcon and Refractive's Motion to Dismiss the Third–Party Complaint [Document # 15] and Alcon and Refractive's Reply [Document # 16].[2] Alcon and Refractive's Motion to Dismiss EBW's Third–Party Complaint [Document # 10] is therefore ripe for review.

## II. FACTUAL BACKGROUND

The original action by GE against EBW, filed June 3, 2003 [Document # 1], alleged that EBW had breached its lease agreements with GE by failing to make lease payments on sixteen machines, including six LAMAR Vision Lasik Systems that were manufactured and licensed by Alcon and Refractive. GE has since declared the full amounts of these sixteen leases, totaling more than $2.6 million, to be immediately due and payable. EBW has refused to pay. On the surface of GE's Complaint, it is therefore clear that GE's case against EBW is based upon the single legal theory of a breach of contract.

Nevertheless, on July 14, 2003, EBW filed a Third–Party Complaint against Alcon and Refractive in which it alleged that the Third–Party Defendants, Alcon and Refractive, tortiously interfered with contracts that EBW had with doctors and clinics who were performing eye surgeries with the lasers that EBW had subleased to them. EBW also alleged that the Third–Party Defendants engaged in conduct that violated RICO and the North Carolina UDTPA.

Specifically, EBW alleged that at some point after it entered into the agreement and licenses with Alcon, Alcon became aware of problems with the lasers to the extent that the lasers were found to be malfunctioning by either failing to make a sufficient cut, or cutting too deeply into patients' eyes. This alleged malfunctioning required some patients to have their vision corrected more

---

**2.** EBW also filed a "Response to Alcon Laboratories, Inc. and Refractive Horizons, L.P.'s Reply Brief" on October 16, 2004 [Document # 17]. As per Local Rule 7.3, such filings in response to

a reply brief are not permitted and thus this "Response" will not be considered as part of this opinion.

than once. EBW argues that in response to this information, Alcon and Refractive "entered into a criminal enterprise to defraud and deceive the doctors and the companies who used the machines (of which EBW Laser, Inc., was one)." (Third–Party Compl. at 3). EBW alleged that, as a part of this criminal enterprise, whenever a doctor reported an incident of the lasers malfunctioning to the Third–Party Defendants, the Third–Party Defendants would deny knowledge of any problems with the lasers, and then the Third–Party Defendants would ask to inspect the patient records, which would be sent to the Third–Party Defendants through the mail. Alcon would then offer the false explanation that the problems were due to some other reason, such as improper physician technique or the humidity of the procedure room. EBW contends that Third–Party Defendants engaged in this practice for the purpose of avoiding reporting the malfunctioning laser machines to the U.S. Food and Drug Administration.

It was further alleged that when EBW itself informed the Third–Party Defendants about two malfunctioning machines, the Third–Party Defendants advised it that the problems could be due to the physician's technique or excess humidity. The Third–Party Defendants then reviewed EBW's doctors' patients' records and "reported false conclusions." (Third–Party Compl. at 5). EBW further alleged that the Third–Party Defendants never acknowledged that they were aware of other reports of problems with the laser machines malfunctioning. EBW, however, became concerned because the constant malfunctioning of the machines required several patients to have their surgeries repeated, which meant that EBW had to pay procedure fees to Third–Party Defendants for those repeated surgeries.

EBW entered into negotiations with Third–Party Defendants to dispute these excess fees. In March 2003, EBW's President and CEO Mark McDaniel contacted the Third–Party Defendants in order to complete their negotiations on what fees would be paid. During this conversation, he inquired about rumors that Alcon had experienced problems with other lasers that were licensed out. Alcon, however, denied that such problems existed. Notwithstanding the negotiations, the Third–Party Defendants brought a lawsuit against EBW in Texas state court on April 21, 2003, seeking more than $1.9 million in unpaid procedure fees. EBW alleged that Alcon then started contacting the doctors with whom EBW had contracts to inform those doctors that Alcon would be "cutting off the machines so that he [sic] doctors could no longer perform surgery on EBW Laser machines." (Third–Party Compl. at 8). EBW alleged that many of the doctors it had contracts with then attempted to make their own arrangements to pay directly to the Third–Party Defendants any outstanding procedure fees that were due. EBW's claim of tortious interference is based on its allegation that the Third–Party Defendants demanded that the doctors cease doing business with EBW and instead sign leasing contracts directly with the Third–Party Defendants. EBW further contends that this conduct by the Third–Party Defendants had the direct result of destroying EBW's ability to "pay their leases ... eliminating their source of income from doctors with whom [EBW] had contracts, and virtually destroying the economic integrity of [EBW]." (Third–Party Compl. at 9). The prayer for relief of EBW's Third–Party Complaint, however, does not suggest that the Third–Party Defendants, by their alleged conduct, should in some way be obligated to pay GE any amount that GE seeks to recover against EBW for breach of their contract. Rather EBW prays for compensatory and punitive damages and attorney fees against the Third–Party Defendants for violations of RICO and the North Carolina UDTPA.

## III. THIRD–PARTY DEFENDANTS' MOTION TO DISMISS

With respect to a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, dismissals are allowed "only in very limited circumstances." *Rogers v. Jefferson–Pilot Life Ins. Co.*, 883 F.2d 324, 325 (4th Cir. 1989). Generally, "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allega-

tions." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002) (internal quotations omitted); *accord Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993). In making this determination, a court must view the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded factual allegations. *Randall v. United States*, 30 F.3d 518, 522 (4th Cir.1994). Thus, the purpose of a motion to dismiss is to test the legal sufficiency of the complaint and not the facts that support it. *Neitzke v. Williams*, 490 U.S. 319, 326–27, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Revene v. Charles County Comm'rs*, 882 F.2d 870, 872 (4th Cir.1989)(internal quotations omitted).

■ In this case, Third–Party Defendants have argued that pursuant to Rule 14(a) of the Federal Rules of Civil Procedure, Alcon and Refractive have been improperly added by EBW to the lawsuit. Rule 14(a) states that a defendant may bring in a third party "[a]t any time after commencement of the action" where that third-party defendant "may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." Fed.R.Civ.P. 14(a). This means that the defendant may only bring in a third-party defendant when the third-party defendant is liable to the defendant for the losses sustained by the defendant as a result of plaintiff's claim. "Unrelated liability to the defendant is not a basis for impleader." 3 *Moore's Federal Practice* § 14.04[2] (Matthew Bender 3d). Thus, the third-party defendant must be derivatively liable to the plaintiff.

■ A transactional test is not appropriate to determine whether impleader is proper. This means that a separate and independent claim or claims, such as EBW attempts to assert here against the Third–Party Defendants for violations of RICO and the North Carolina UDTPA, cannot be brought under Rule 14 of the Federal Rules of Civil Procedure, even if it involves the same transaction or facts. *See DIRECTV, Inc. v. Amerilink Corp.*, No. 1:01CV953, 2002 WL 31165149, at

*3 (M.D.N.C. Aug. 21, 2002); 3 *Moore's Federal Practice* § 14.04[3][a] (Matthew Bender 3d). Instead, a party may only be impleaded under Rule 14 if the defendant is attempting to "pass on to the third party all or part of the liability asserted against the defendant." 3 *Moore's Federal Practice* § 14.04[3][a] (Matthew Bender 3d); *see also Rhodes, Inc. v. Morrow*, No. 6:95CV00288, 1997 WL 582878, at *2 (M.D.N.C. March 6, 1997)(finding that "third-party defendant's liability to the third-party plaintiff must be derivative of or secondary to the third-party plaintiff's liability to the plaintiff.").

■ In the instant case, it is clear that EBW is not asserting that either Alcon or Refractive are derivatively liable to GE for EBW's failure to pay GE what it is due under the Master Lease Agreements between the parties. EBW instead argued in its response to the Third–Party Defendants' Motion to Dismiss that "EBW was doing fine paying GE and did not require any money from Third party Defendants to continue paying GE." (EBW's Memo. Opp'n Mot. Dismiss at 2). Yet, EBW later states that, as a practical matter, even if GE had a judgment tomorrow, Third–Party Defendants have destroyed EBW's contracts so thoroughly that that judgment "would be worthless." *Id.* at 3. Additionally, EBW stated in its Third–Party Complaint that the reason it has not paid GE Healthcare was because the Third–Party Defendants eliminated EBW's ability to "pay their leases ... eliminating their source of income from doctors with whom [EBW] had contracts, and virtually destroying the economic integrity of [EBW]." (Third–Party Compl. at 9). Although EBW has alleged what may be a viable claim, which it may be able to independently assert against the Third–Party Defendants, EBW fails to assert any basis for a derivative claim against Third–Party Defendants that would make them proper parties in this breach of contract dispute between GE and EBW. It is clear that the Third–Party Defendants are not parties to any of the lease agreements between GE Healthcare and EBW. Furthermore, it is clear that EBW is not asserting that the Third–Party Defendants have in some way promised to indemnify EBW

against GE's claims against EBW for breach of contract. Instead, EBW's only assertion is that Third–Party Defendants "undertook a series of extrajudicial actions to destroy the business of EBW" by engaging in conduct that amounts to tortious interference with its contracts with doctors and by violating both RICO and the North Carolina UDTPA. This Court finds, however, that EBW has not provided any basis to support EBW's apparent argument that conduct by the Third–Party Defendants that would amount to either tortious interference or other tortious or criminal conduct would create any indemnification, contribution, or subrogation obligations for the Third–Party Defendants with respect to the breach of contract dispute that exists between GE and EBW. *See Leasetec Corp. v. Inhabitants of the County of Cumberland,* 896 F.Supp. 35 (D.Me.1995). Therefore, the Court finds that EBW has improperly attempted to use Rule 14 of the Federal Rules of Civil Procedure to implead the Third–Party Defendants in this breach of contract suit filed by GE against EBW. For this reason, this Court further finds that the Third–Party Defendants' Motion to Dismiss must be granted. Given the Court's ruling on the Third–Party Defendants' Motion to Dismiss, it is not necessary for the Court to address the alternative request that the Court sever EBW's Third–Party Complaint and consolidate it with a matter already pending before the Court between EBW and Third–Party Defendants.

## IV. CONCLUSION

For the reasons stated herein, Third–Party Defendants' Motion to Dismiss EBW's Third–Party Complaint is GRANTED and Third–Party Plaintiff's claims are hereby DISMISSED with prejudice. An Order and Judgment consistent with this Memorandum Opinion shall be filed contemporaneously herewith.

### *ORDER AND JUDGMENT*

For the reasons stated in the Memorandum Opinion filed contemporaneously herewith,

IT IS HEREBY ORDERED that Third–Party Defendants' Motion to Dismiss [Document # 10] is GRANTED. Accordingly, IT IS FURTHER ORDERED that EBW's Third–Party Complaint against the Third–Party Defendants is hereby DISMISSED with prejudice.