Gants, J.
On September 24, 1997, the plaintiff, Rene Pena (“Pena”), suffered a serious injury to his left hand while he was repairing a roof at an apartment building in Brighton, Massachusetts owned by the defendant, Leon Geszpenc (“Geszpenc”). Pena sought workers’ compensation benefits, claiming that he was employed by Geszpenc and injured in the course of his employment. Geszpenc, however, had failed to obtain workers’ compensation coverage, as required by G.L.c. 152, §25A. As a result, Pena applied for workers’ compensation benefits from the Workers’ Compensation Trust Fund (“the Trust Fund”), which was created, among other reasons, to pay “benefits resulting from approved claims against employers . . . who are uninsured in violation of this chapter . . .” G.L.c. 152, §65(2)(e).
Geszpenc joined the Trust Fund in defending against Pena’s workers’ compensation claim. In accordance with G.L.c. 152, §10A, a conference was held before Administrative Judge Daniel O’Shea of the Department of Industrial Accidents (“DIA”), who issued an order awarding Pena total incapacity benefits under G.L.c. 152, §34. Both Pena and the Trust Fund appealed that order, seeking a de novo hearing before the same Administrative Judge.
As a result of the appeal, a three-day evidentiary hearing was conducted before Administrative Judge O’Shea, at which Pena, Geszpenc, and the Trust Fund were each represented by separate counsel. Pena testified at the hearing that three of his fingers were amputated while, as an employee of Geszpenc, he was using a skill-saw repairing a doorway roof at one of Geszpenc’s rental income properties. Decision of the DIA Administrative Judge, Feb. 22, 2001 (“DIA Decision”), at 6. Geszpenc testified that he hired Pena, but solely as an independent contractor, not as an employee. Id. at 6-7. Geszpenc also testified that the repair of the doorway roof was performed by “Bob,” not Pena, but Geszpenc claimed that he could not locate “Bob” and admitted that he had not told anyone about “Bob” until the hearing. Id. at 8. Administrative Judge O’Shea rejected Geszpenc’s testimony entirely, finding it “contradictory, evasive, and plainly illogical.” Id. at 8. Ultimately, the Administrative Judge concluded that the amputation of Pena’s fingers “arose out of and in the course and scope of employment” with Geszpenc and that Pena was temporarily totally incapacitated for work because of this work-related accident. Id. at 11-12. He awarded Pena employee compensation under G.L.c. 152, §34 of $126.06 per week, medical benefits under G.L.c. 152, §§13 and 30, and attorneys fees in the amount of $4,263.90. Id. at 12-13. He also found that Geszpenc “made material representations of fact” and ordered him to pay penalties to Pena under G.L.c. 152, §14 equal to six times the average weekly wage in the Commonwealth, plus attorneys fees and costs. Id.
Both the Trust Fund and Geszpenc appealed the DIA Decision to the DIA Reviewing Board. The Trust Fund, however, later withdrew its appeal. Geszpenc sought and obtained continuances to file his appeal brief, but the final extension expired on December 31, 2001 without any brief having been filed. As a result, the DIA Reviewing Board issued a Memorandum of Disposition on January 11, 2002 dismissing Geszpenc’s appeal for failure to file a brief withing the extended time allotted.
Apart from claiming workers’ compensation, Pena has brought this action, seeking full tort damages, including damages for pain and suffering, arising from his September 24, 1997 work accident. Under G.L.c. 152, §§66 and 67, either the Trust Fund or an employee of an employer without workers’ compensation insurance may bring such actions to recover for personal injuries suffered “by an employee in the course of his employment.” G.L.c. 152, §§66 and 67.
Geszpenc now moves to dismiss this action, contending that this Court lacks subject matter jurisdiction. In essence, Geszpenc contends that Pena, having *639 sought workers’ compensation benefits from the Trust Fund, is now barred from seeking any further recovery for his injuries. Pena not only insists that this Court has subject matter jurisdiction over this action, but has moved for partial summary judgment as to liability, contending that the DIA Decision has become a final adjudication as to the merits that resolves in Pena’s favor through collateral estoppel every essential element as to liability.
DISCUSSION
This Court shall first consider Geszpenc’s motion to dismiss for lack of subject matter jurisdiction, since a finding in Geszpenc’s favor on this issue would obviate the need to consider Pena’s motion for partial summary judgment.
Geszpenc’s Motion to Dismiss
Geszpenc contends that Pena, by prosecuting his workers’ compensation claim against the Trust Fund, has waived his right under the common law to bring a tort claim. His contention is contradicted by the plain language of the relevant Massachusetts statutes governing workers’ compensation and the interpretation of those statutes by the DIA itself.
As mentioned earlier, G.L.c. 152, §66 permits an employee to recover common law tort damages against his employer for injuries suffered in the course of his employment. In such actions, the employee is entitled to recovery without having to establish negligence; the employee need merely show that he was employed by the defendant and that the “injury arose out of and in the course of employment.” Id. G.L.c. 152, §67, however, provides, “Section 66 shall not apply to actions to recover damages for personal injuries received by employees of an insured person or a self-insurer.” G.L.c. 152, §67. When one considers these two statutes together, it is plain that an employee under §66 may bring a tort action against an employer for work-related injuries under §66’s generous strict liability standard only if his employer did not obtain workers’ compensation insurance as required by law. LaClair v. Silberline Mfg. Co., 379 Mass. 21, 26 (1979) (“Where an employer neglects to provide coverage and an accident occurs, it may be sued in a civil action for the full scope of tort damages; most importantly, during such action, the employer loses the ability to assert the common law defenses of fellow servant, assumption of the risk, contributory negligence, and the further defense that the employee’s injury, if arising in the course of employment, did not result from negligence or other fault of the employer”).
The employee of an insured employer may not bring a tort claim under §66. Indeed, under G.L.c. 152, §24, the employee of an insured employer is deemed to have waived his right under the common law to sue his employer for tort damages arising from work-related injuries unless he gives his employer written notice at the time of hire that he claims such a right.
Pena was not the employee “of an insured person or a self-insurer” when he suffered his injuries, so §67 does not bar him from bringing a tort claim under §66. Geszpenc essentially argues that there is another bar to recovery under §66the filing of a claim for workers’ compensation benefits from the Trust Fund that was created under G.L.c. 152, §65(2)(e) to provide benefits to the employees of uninsured employers. Geszpenc can find no statutory support for the existence of this second bar. Instead, he contends that the Legislature, when it enacted G.L.c. 152, §65(8), which specifically permitted the Trust Fund to seek recovery from the uninsured employer for the amount of workers’ compensation benefits the Fund paid to the employee, implicitly declared that the employee had no such right. The fatal flaw in this argument is that §66 specifically grants such a right to an employee; the language in G.L.c. 152, §65(8) simply granted that same right to the Trust Fund, albeit limited to the amount of benefits paid to the employee by the Trust Fund, plus reasonable attorneys fees.
Moreover, the interpretation of the workers’ compensation statutes proposed by Geszpenc is inconsistent with DIA’s own interpretation of these statutes, as embodied in its regulations. DIA’s regulations specifically declare that an employee of an uninsured employer is entitled to compensation and other benefits from the Trust Fund “without election,” and “may also proceed to enforce the liability of an uninsured employer under M.G.L.c. 152, §§66 and 67.” 452 C.M.R. §3.04(1) (2001). See O’Dea v. J.A.L., Inc., 30 Mass.App.Ct. 449, 453 (1991).
Therefore, this Court denies Geszpenc’s motion to dismiss, and finds that this Court has subject matter jurisdiction over Pena’s personal injury action against Geszpenc under G.L.c. 152, §§66 and 67. This Court, however, denies Pena’s motion for sanctions against Geszpenc for having brought this motion.
Pena’s Motion for Partial Summary Judgment
As discussed earlier, to prevail as to liability on his claim under G.L.c. 152, §66, Pena need only prove that (1) he was an employee of Geszpenc on September 24, 1997; (2) he was injured; and (3) his “injury arose out of and in the course of employment.” G.L.c. 152, §66. There can be no dispute that the DIA Administrative Judge found in Pena’s favor as to each of these elements, that these findings were necessary to his award of workers’ compensation benefits, and that these findings became final on January 11, 2002 when the DIA Reviewing Board issued a Memorandum of Disposition dismissing Geszpenc’s appeal for failure to file a brief withing the extended time allotted. Pena now contends that, through the principle of collateral estoppel, Geszpenc is barred from relitigating the DIA’s factual findings as to these elements and Pena, therefore, is entitled to partial summary judgment as to liability.
*640 . “The judicial doctrine of issue preclusion, also known as collateral estoppel, provides that ‘[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.’ ” Martin v. Ring, 401 Mass. 59, 60-61 (1987), quoting Fireside Motors, Inc. v. Nissan Motor Corp. in U.S.A., 395 Mass. 366, 372 (1985), which quoted Restatement (Second) of Judgments §27 (1982). “The purpose of the doctrine is to conserve judicial resources, to prevent the unnecessary costs associated with multiple litigation, and to ensure the finality of judgments.” Martin v. Ring, 401 Mass. at 61 (1987). See Massachusetts Property Ins. Underwriting Ass’n v. Norrington, 395 Mass. 751, 756 (1985). “Before a party will be precluded from relitigating an issue, a court must determine that (1) there was a final judgment on the merits in the prior adjudication; (2) the party against whom preclusion is asserted was a party (or in privity with a party) to the prior adjudication;... (3) the issue in the prior adjudication was identical to the issue in the current adjudication; . . . [and] (4) the issue decided in the prior adjudication [was] essential to the earlier judgment.” Tuper v. North Adams Ambulance Service, Inc., 428 Mass. 132, 134-35 (1998). See Fay v. Federal Nat’l Mtge. Ass’n, 419 Mass. 782, 790(1995), quoting Massachusetts Prop. Ins. Underwriting Ass’n v. Norrington, 395 Mass. at 753. Each of these four requirements is plainly satisfied in this case.
“A final order of an administrative agency in an adjudicatory proceeding, not appealed from and as to which the appeal period has expired, precludes relitigation of the same issues between the same parties, just as would a final judgment of a court of competent jurisdiction.” Stowe v. Bologna, 32 Mass.App.Ct. 612, 615 (1992), aff'd., 415 Mass. 20, 22 (1993). To date, however, the Supreme Judicial Court has only approved of the defensive use of collateral estoppel when the prior adjudication was before an administrative agency. Tuper v. North Adams Ambulance Service, Inc., 428 Mass. at 135. The critical question in this case is whether the offensive use of collateral estoppel is permissible as to this adjudication by the DIA.
Phrased differently, there is no doubt that, if the DIA administratively had denied Pena’s claim for workers’ compensation benefits from the Trust Fund, either because it ruled that Pena was not Geszpenc’s employee or that his injuries had not arisen out of and in the course of employment, Pena would be precluded from relitigating these issues in court in his claim against Geszpenc under G.L.c. 152, §66 seeking tort damages. To be blunt, if he had lost at the DIA, he would automatically also have lost in his §66 action in court. Pena essentially contends that, having won rather than lost in his DIA adjudication, he should not be required to relitigate these very same issues. Again, stated bluntly, since Geszpenc would have automatically won in court if he had prevailed in the DIA, Pena contends that he, having prevailed in the DIA, should also automatically win in court as to liability.
There is certainly equitable force in Pena’s argument. While it is primarily used defensively, the doctrine of collateral estoppel may be used offensively if, in the “wide discretion” of the court, “to do so would be fair to the defendant.” Bar Counsel v. Board of Bar Overseers, 420 Mass. 6, 11 (1995).[1] In the one case, however, in which the Supreme Judicial Court considered the offensive use of collateral estoppel where the prior adjudication was before an administrative agencyTuper v. North Adams Ambulance Service, Inc.it refused to apply collateral estoppel because “[t]he issues in the two adjudications were not identical.” 428 Mass. at 135. While this reason would have barred even the defensive use of collateral estoppel, the Court also indicated that the offensive use of collateral estoppel was not appropriate when the prior administrative adjudication concerned the award of unemployment compensation benefits. Id. at 136-37. The Court declared:
Our conclusion here comports with over-all considerations of fairness. See Whitehall Co. v. Barletta, 404 Mass. 497, 502 (1989); Loring v. Marshall, 396 Mass. 166, 175-76, (1985) (O’Connor, J., dissenting). The proceedings before the board were relatively informal and the defendant’s stake in the adjudication was relatively small. See G.L.c. 151A, § 14 (setting forth formulas for employer’s contributions to pooled fund, based on employer’s claims experience). By contrast, in this action, the plaintiff s demands for relief, which included punitive damages, exceeded $250,000. Applying a preclusive effect to the board’s determinations would be plainly unfair.
Further, our conclusion also comports with the broad policy considerations underlying G.L.c. 151A, §25(e)(2). This statute “was enacted to afford relief to those who are unemployed through no fault of their own.” Cahalen v. Commissioner of the Dept. of Employment & Training, 41 Mass.App.Ct. 26, 27 (1996), citing Haefs v. Director of the Div. of Employment Sec., 391 Mass. 804, 806 (1984). The statute contemplates the prompt adjudication of claims for unemployment benefits, in response to the need to alleviate quickly the harsh financial consequences of unemployment. See Director of the Div. of Employment Sec. v. Mattapoisett, 392 Mass. 858, 862 n. 6 (1984). If successful claimants before the department are allowed to use collateral estoppel offensively in a subsequent civil action, employers will be forced to litigate unemployment compensation claims to the hilt, with full appeals, because of the substantially greater variety and extent of civil claims which might then follow. Such a result would be directly contrary to the objective, and even *641 the Federal mandate, of promptly resolving such claims. See California Dep't of Human Resources Dev. v. Java, 402 U.S. 121, 135 (1971).

Id.

This Court does not read Tuper to bar the offensive use of collateral estoppel whenever the prior adjudication was issued by an administrative agency.[2] Rather, this Court reads Tuper to bar its offensive use only when fairness and public policy dictate against its use. Here, fairness and public policy strongly dictate in favor of the offensive use of collateral estoppel as to the DIA adjudication.
The Fairness of Offensive Collateral Estoppel
As to the fairness of offensive collateral estoppel, an employer has little incentive to devote substantial legal resources to fight an employee’s claim for unemployment compensation because the only consequence of losing is that his claims experience will be marginally worse and his contributions to the pooled fund marginally greater. See G.L.c. 151A, §14. While the unemployed former employee has more at stakethe award of unemployment compensationeven he cannot know how much money is at issue because he cannot reasonably foresee the length of his period of unemployment. As a result, unemployment compensation hearings are generally informal, usually conducted without counsel, and, to be frank, the findings are not consistently reliable. The Supreme Judicial Court justly was concerned about the fairness of permitting an unopposed or half-heartedly opposed finding in favor of the employee resulting from such an informal process to be leveraged by the employee through collateral estoppel into a finding of civil liability, with potentially substantial damage consequences.
These circumstances are in sharp contrast to a DIA claim for workers’ compensation benefits against an uninsured employer, where the amount of money at stake is far higherweekly compensation for the period of disability, medical benefits, and attorneys fees. See G.L.c. 152, §65(2) and (8). Perhaps as a result, a DIA adjudication requires a formal administrative hearing in which the employee, employer, and Trust Fund may all be represented by separate counsel (as they were here), the taking of testimony from live witnesses, and written findings of fact and conclusions of law. The DIA’s “quasijudicial nature and its primacy in enforcing the Workmen’s Compensation Act” were among the reasons the Supreme Judicial Court has found that the use of collateral estoppel is “particularly apt in the workmen’s compensation context.” Martin v. Ring, 401 Mass, at 61. Indeed, in a case like this, where the employer chose to retain his own counsel and join the Trust Fund in challenging the employee’s workers’ compensation claim, there is virtually no risk that the employer will blithely sit silently and acquiesce in a meritless claim for workers’ compensation. If the employer intended to do nothing to defend against the claim, he would not have wasted the money needed to pay separate counsel to join the Trust Fund attorney at the DIA hearing. Therefore, the concerns of fairness that properly caused the Supreme Judicial Court to reject the offensive use of collateral estoppel with respect to the findings of an unemployment insurance administrative adjudication simply do not apply when the offensive use of collateral estoppel is applied to:
1. the factual findings essential to a final judgment in a DIA administrative adjudication;
2. resulting from a workers’ compensation claim brought by an employee of an uninsured employee against the Trust Fund;
3. when the employer has retained separate counsel and joined the Trust Fund in defending against the workers’ compensation claim at the DIA hearing.[3]
Indeed, when these three circumstances are present, the concerns of fairness tilt strongly in favor of the offensive use of collateral estoppel by an employee. The uninsured employer has had his “day in court” at the DIA hearing; if the employer had prevailed, he would have succeeded in barring not only the employee’s claim for workers’ compensation benefits but also his claim for tort damages under §66. Why should the employee have to win twice to obtain workers’ compensation benefits and tort damages when the employer has to win only once to deny them?
Moreover, while an employer properly may believe that all that is at stake in an unemployment compensation hearing is the future size of his unemployment taxes and be stunned to discover the potential implications of an offensive use of collateral estoppel, an employer without worker’s compensation insurance whose employee is injured should know full well that the findings in the DIA adjudication will have collateral estoppel implications in the anticipated §66 civil action. The employer who decides to join the Trust Fund in fighting a workers’ compensation claim has every incentive to fight fiercely, because a victory will eliminate the employee’s claim to both workers’ compensation benefits and tort damages. Having had both the incentive and the full and fair opportunity to adjudicate the claim at the DIA, the employer should be obliged to live with the outcome of that administrative litigation, just as the employee must. Indeed, the employee is more deserving of fairness than the employer, because the employer is faced with a §66 civil action only because he violated the law by failing to obtain workers’ compensation benefits for his employees; the employee is blameless.
Public Policy Considerations Regarding the Offensive Use of Collateral Estoppel
The Supreme Judicial Court expressed concern in Tuper that permitting the offensive use of collateral estoppel with unemployment insurance administrative adjudications would ultimately redound to the detriment of employees because some employers, who might not challenge an employee’s claim for unem *642 ployment compensation if all that was at stake was a marginal increase in the employer’s contribution to the pooled fund, would challenge it through appeal if the insurance adjudication could lead to a far larger civil judgment against the employer. Tuper v. North Adams Ambulance Service, Inc., 428 Mass. at 136-37. Those public policy concerns are not present when the offensive use of collateral estoppel is applied to factual findings essential to a final judgment in a DIA administrative adjudication resulting from a workers’ compensation claim brought by an employee of an uninsured employee against the Trust Fund when the employer has retained separate counsel and joined the Trust Fund in defending against the workers’ compensation claim at the DIA hearing. Indeed, under these circumstances, public policy favors the offensive use of collateral estoppel.
In these cases, permitting the offensive use of collateral estoppel will not materially increase the resolve of employers to fight workers’ compensation claims, because this Court is applying collateral estoppel only to cases where the employer has already chosen to join the Trust Fund in defending against the claim. As discussed earlier, such employers already have demonstrated a resolve to fight these claims and already have a substantial incentive to do so, because a victory at the DIA will ensure victory against a §66 tort claim. To the extent that employers will have a marginally greater incentive to fight these claims to prevent the offensive use of collateral estoppel, the increase in DIA adjudicative resources and employee attorneys fees that may result will be far less than the cost in judicial resources and employee attorneys fees from a second trial on the merits in the §66 tort action.
Moreover, if the defensive, but not the offensive, use of collateral estoppel were permitted in these cases, employees would have an incentive to bring and resolve the §66 civil action before the DIA workers’ compensation claim, because this ordering of adjudications would permit them to obtain all their damages by winning only once rather than twice. This strategy is not impractical; it took more than two and a half years after his accident for Pena to commence his DIA hearing and more than four years for him to obtain a final DIA adjudication on his workers’ compensation claim. If he cannot use this final DIA adjudication offensively and must re-try the entire case again in his §66 civil action, he would have been better off to press for this case to be tried earlier and resolve the entire case in one trial. Yet, this ordering of adjudications is contrary to the public policy implicit in workers’ compensation, which was intended to provide workers promptly with partial compensation and medical benefits when they suffer a work-related injury. Public policy should strongly favor resolving workers’ compensation claims administratively at the DIA first, and §66 civil actions second.
Finally, permitting the offensive use of collateral estoppel in such cases is consistent with the policy purpose implicit in the Legislature’s decision to permit the employees of uninsured employers to obtain full tort damages in §66 civil actions without proving negligence. Allowing such employees strict liability recovery provides a powerful incentive to employers to comply with the law mandating workers' compensation coverage. Permitting the offensive use of collateral estoppel in §66 civil actions modestly strengthens that incentive.
Nor will allowing the offensive use of collateral estoppel provide any windfall to employee claimants. The Trust Fund has a lien on all benefits it paid to the employee, and, within sixty days of the judgment or settlement of a §66 civil action, the employee must “remit to the Fund an amount equal to the compensation paid by the Fund as of the date of such settlement or judgment, unless the Fund and the claimant agree on the remittance of a lesser amount.” 452 C.M.R. §3.04(5).
For these reasons, this Court shall allow Pena the offensive use of collateral estoppel with respect to the factual findings essential to the final judgment in the DIA administrative adjudication. In view of those essential factual findings, this Court allows Pena’s motion for partial summary judgment as to liability.
ORDER
For the reasons stated above, this Court ORDERS as follows:
1. Geszpenc’s motion to dismiss is DENIED;
2. Pena’s motion for partial summary judgment as to liability is ALLOWED; and
3. Pena’s motion for sanctions is DENIED.

 The Restatement (Second) of Judgments §29 (1982) sets forth eight circumstances in which the offensive use of collateral estoppel would generally not be fair:
(1) Treating the issue as conclusively determined would be incompatible with an applicable scheme of administering the remedies in the actions involved;
(2) The forum in the second action affords the party against whom preclusion is asserted procedural opportunities in the presentation and determination of the issue that were not available in the first action and could likely result in the issue being differently determined;
(3) The person seeking to invoke favorable preclusion, or to avoid unfavorable preclusion, could have effected joinder in the first action between himself and his present adversary;
(4) The determination relied on as preclusive was itself inconsistent with another determination of the same issue;
(5) The prior determination may have been affected by relationships among the parties to the first action that are not present in the subsequent action, or apparently was based on a compromise verdict or finding;
(6) Treating the issue as conclusively determined may complicate determination of issues in the subsequent action or prejudice the interests of another party thereto;
*643 (7) The issue is one of law and treating it as conclusively determined would inappropriately foreclose opportunity for obtaining reconsideration of the legal rule upon which it was based;
(8) Other compelling circumstances make it appropriate that the party be permitted to relitigate the issue.
Restatement (Second) of Judgments §29 (1982), quoted in Bar Counsel v. Board of Bar Overseers, 420 Mass. at 11-12. None of these circumstances are present in this case.

 Indeed, two years after Tuper was decided, the Appeals Court permitted the offensive use of collateral estoppel in a forfeiture action when the prior administrative adjudication arose from a liquor license revocation proceeding before the Alcoholic Beverages Control Commission (“ABCC”). Commonwealth v. Two Parcels of Land, 48 Mass.App.Ct. 693 (2000). The Appeals Court, however, although it cited Tuper, failed to address Tuper's concerns about giving offensive collateral estoppel effect to administrative adjudications. Rather, it affirmed the offensive use of collateral estoppel because it concluded that the defendant had a full and fair opportunity to litigate this claim before the ABCC and had “every incentive to contest the revocation proceedings vigorously since the value of the business would depend on the liquor license.” Id. at 698.

 This Court specifically is not deciding whether the offensive use of collateral estoppel would be appropriate against an employer when the employer did not join the Trust Fund in defending against the workers’ compensation claim at the DIA.